# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

_____

BRANDON HANKS, AND OTHER
SIMILARLY SITUATED INDIVIDUALS,

               PLAINTIFF,

vs.

CITY OF SYRACUSE, KENTON
BUCKNER, *IN HIS INDIVIDUAL
CAPACITY*; DEPUTY CHIEF RICHARD
TRUDELL, *IN HIS INDIVIDUAL CAPACITY*;
DEPUTY CHIEF JOSEPH CECILE, *IN HIS
INDIVIDUAL CAPACITY*; POLICE
OFFICERS, CAPTAIN TIMOTHY GAY, *IN
HIS INDIVIDUAL CAPACITY*; COLIN
HILLMAN, *IN HIS INDIVIDUAL
CAPACITY*; DEREK MCGORK, *IN HIS
INDIVIDUAL CAPACITY*; WILLIAM
KITTELL, *IN HIS INDIVIDUAL CAPACITY*;
ANOTHONY FIORINI, *IN HIS INDIVIDUAL
CAPACITY*; DAVID METZ, *IN HIS
INDIVIDUAL CAPACITY*; SHAWN HAUCK,
*IN HIS INDIVIDUAL CAPACITY*; SUSAN
IZZO, *IN HER INDIVIDUAL CAPACITY*;
ANN CLARK, *IN HER INDIVIDUAL
CAPACITY*; BRANDON FOUGNIER, *IN HIS
INDIVIDUAL CAPACITY*; and Does 1-100;

               DEFENDANT(S).

---

CASE NO. 5:21-cv-00921 (GLS/ATB)

**COMPLAINT FOR DAMAGES**

**A.  FEDERAL CLAIMS**
1. **TITLE VII VIOLATIONS, RACE DISCRIMINATION, HARASSMENT, RETALIATION & HOSTILE WORK ENVIRONMENT;**
2. **MONELL CLAIM AGAINST CITY OF SYRACUSE (42 U.S.C. § 1983);**
3. **42 U.S.C. § 1981 VIOLATIONS, RACIAL HARASSMENT, DISCRIMINATION & RETALIATION;**
4. **42 U.S.C. § 1983 VIOLATIONS, FIRST AMENDMENT;**
5. **42 U.S.C. § 1983 VIOLATIONS, FOURTH AMENDMENT VIOLATIONS INVASION OF PRIVACY;**
6. **42 U.S.C. 1983 VIOLATIONS, FOURTEENTH AMENDMENT VIOLATIONS;**
7. **42 U.S.C. 1981 VIOLATIONS, DEPRIVATION OF RIGHT TO CONTRACT;**
8. **42 U.S.C. 1985 VIOLATIONS, CONSPIRACY;**
9. **42 U.S.C. 1986 VIOLATIONS, FAILURE TO PROTECT CONSTITUTIONAL RIGHTS**

**B.  STATE CLAIMS**
10. **N.Y.S. EXC. LAW § 296 VIOLATIONS - DISCRIMINATION, HARASSMENT, RETALIATION & HOSTILE WORK ENVIRONMENT;**

**11. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
**12. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
**13. NEGLIGENT TRAINING, DISCIPLINE, RETENTION, AND SUPERVISION;**
**14. SLANDER;**
**15. LIBEL;**
**16. DEFAMATION PER SE;**
**17. RESPONDEAT SUPERIOR;**

**VIOLATION OF FEDERAL 1980 CONSENT DECREE;**

**VIOLATION OF MAYOR WALSH'S EXECUTIVE ORDER OF 2020;**

**JURY TRIAL DEMANDED**

## I.   INTRODUCTION

1.     DEFENDANTS, and each of them, agreed, conspired, and took overt acts preventing the promotion of Officer Brandon Hanks, with an award-winning reputation for policing, under the knowingly false and contrived assertions, *Inter Alia,* that Officer Hanks was "gang affiliated," a "narcotics trafficker," and listens to "rap music."

2.     Despite a long and entrenched history of racially discriminatory policing carried out by the Syracuse Police Department ("SPD") whose brunt has been predominantly born by the African American citizens of the CITY OF SYRACUSE, those same discriminatory and racist tendencies have now been directed inward at one of the Department's own. Having grown up in Syracuse and having experienced firsthand the SPD's oppressive and disparate treatment directed at his African American peers and community, PLAINTIFF BRANDON HANKS, rather than carry forth a scorn and disdain for the Department and policing in general, sought out a career in policing in order to model a more just and affirming role that the Department could play in the

lives of its citizens. As a police officer with the SPD, PLAINTIFF BRANDON HANKS engaged in creative strategies to assist in redirecting the young people in Syracuse to a life of service and contribution rather than a life of crime. Nevertheless, the achievements that PLAINTIFF BRANDON HANKS made in this regard were not fully shared by his peers and supervisors in the Department but instead, wholly conflicted with the Department and CITY OF SYRACUSE's custom, practice and policy of perceiving and disparately treating the African American community under racialized terms as criminals and undeserving of the rights endowed them under state, federal and constitutional law.

3.      PLAINTIFF BRANDON HANKS' success in garnering the respect and acknowledgment of his positive contributions to the community were far too much for his peers at the SPD who, as predominantly European American, were adamantly opposed to PLAINTIFF BRANDON HANKS' joining the ranks of the coveted, all European American SPD Gang Violence Taskforce. Rather than championing one of their own who was excelling in his police work, PLAINTIFF BRANDON HANKS' peers affirmatively sought to derail his promotion to the Taskforce by conjuring and fabricating evidence to show that he too, merely on account of his race, was but a criminal and gang member who was merely hiding behind his SPD badge and uniform. It is with the intention to not only redress the egregious and deeply disheartening harms that PLAINTIFF BRANDON HANKS incurred at the hands of his peers in uniform and his employer, the CITY OF SYRACUSE, but to also to shine a light on the SPD and CITY OF SYRACUSE's pervasive and unrelenting discriminatory and downright racist proclivities and actions directed at the African American community of Syracuse, New York.

4.      PLAINTIFF BRANDON HANKS, by his attorneys, CHARLES A. BONNER of the LAW OFFICES OF BONNER & BONNER, and JESSE RYDER of the RYDER LAW FIRM,

respectfully allege, on behalf of himself and others similarly situated, upon facts, evidence, and upon information and belief, as follows:

5.     This is an action for legal and equitable relief to redress DEFENDANTS' unlawful discrimination and harassment based on race and retaliation against PLAINTIFF BRANDON HANKS when performing his entrusted role as a police officer for the Syracuse Police Department. This action seeks economic and non-economic damages, as well as declaratory and injunctive relief.

6.     PLAINTIFF BRANDON HANKS seeks declaratory and injunctive relief to eliminate the effects of DEFENDANTS' past and present racial discrimination and to prevent such discrimination from continuing to adversely affect not only his life and career as a police officer with the SPD, but also the CITY OF SYRACUSE's African American community. PLAINTIFF BRANDON HANKS requests this Court to require DEFENDANTS to affirmatively restructure their work environment to eliminate all forms of discrimination and to create an equitable promotion selection procedure, as well as providing training and other terms and conditions of employment in strict compliance with State and Federal equal protection under the law and DEFENDANTS' compliance with the existing Consent Decree of 1980. PLAINTIFF BRANDON HANKS seeks damages, including back-pay, front-pay; and the following:

    A.    Economic loss, including lost wages, lost benefits, pharmacy bills, medical bills, and other economic loss which can be quantified when ascertained.

    B.    Non-economic loss, including, but not limited to, pain, anxiety, inconvenience, mental distress, emotional distress, loss of enjoyment of life, humiliation, fear, discomfort, spiritual injury, damage to health image, damage to self-image, damage to career, suffering and misery.

    C.    Punitive damages against Individual Defendants.

    D.    Attorney fees and costs.

7.     PLAINTIFF BRANDON HANKS also seeks punitive damages against Individual Defendants and request a jury trial pursuant to 42 U.S.C § 1981. Furthermore, PLAINTIFF BRANDON HANKS seeks attorneys' fees and costs pursuant to 42 U.S.C.§§ 1983, 1988; and other equitable remedies necessary to fully redress his harms.

## II.     JURISDICTION AND VENUE

8.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4), and 42 U.S.C. § 2000e-5; and 42 U.S.C. § 12117(a) and 12203, which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3), Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a and the "Civil Rights Act of 1866," as amended by § 101 of the "Civil Rights Act of 1991," and codified at 42 U.S.C. § 1981; N.Y. Exec Law §§ 296(1)(a)(e)(h) and 296(7); and N.Y. Exec. Law, art. 15 ("Human Rights Law").

9.     Venue is proper in this judicial district because the unlawful employment practices alleged herein below were committed by the DEFENDANTS within Onondaga County, State of New York. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5.

## III.     PARTIES

10.     PLAINTIFF BRANDON HANKS is an African American male citizen of the United States over the age of nineteen (19) years and is a resident citizen of Onondaga County and the State of New York.

11.     Defendant CITY OF SYRACUSE POLICE DEPARTMENT is a division of the CITY OF SYRACUSE, a governmental organization of the State of New York.

12.     DEFENDANTS' TIMOTHY GAY, COLIN HILLMAN, DEREK MCGORK, WILLIAM KITTELL, ANOTHONY FIORINI, DAVID METZ, SHAWN HAUCK, SUSAN

IZZO, ANN CLARK, and BRANDON FOUGNIER ("DEFENDANT OFFICERS") are "Persons" officers employed by Defendant CITY OF SYRACUSE as police officers.

13.   At all times relevant to this action, Defendant CITY OF SYRACUSE is the employer of the PLAINTIFF within the meaning of 42 U.S.C. §1981 and of 42 U.S.C. § 2000e(a) and (b).

14.   Defendants CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, and DEPUTY CHIEF RICHARD TRUDELL are managing agents and supervisors of PLAINTIFF BRANDON HANKS, as well as Defendant Officers at all times relevant to this action.

### IV.   DOE DEFENDANTS

15.   PLAINTIFF BRANDON HANKS does not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT Does 1 through 100 inclusive, and therefore sues these DEFENDANTS by such fictitious names. PLAINTIFF BRANDON HANKS will amend his complaint to allege their true names and capacities when this has been ascertained.

16.   At all times relevant to this action, PLAINTIFF BRANDON HANKS is an employee of CITY OF SYRACUSE and was rightfully attempting to comply with and enforce the terms of contract(s), including the Consent Decree of 1980, regarding his employment. At all times relevant to this action, CITY OF SYRACUSE has employed at least fifteen (15) or more employees.

### V.   EXHAUSTION OF ADMINISTRATIVE PREREQUISITES

17.   PLAINTIFF BRANDON HANKS pursues claims against the DEFENDANTS under both Title VII and 42 U.S.C. §1981, and for New York State Law Claims. PLAINTIFF BRANDON HANKS has met all administrative conditions precedent for the filing of this case with respect to state claims having filed a notice-of-claim on or about June 23, 2021. With respect

to his Title VII claim, PLAINTIFF BRANDON HANKS has timely filed a charge of discrimination with the EEOC and received his right-to-sue letter on or about July 28, 2021, *See* **Exhibit 1**.

### VI.   <u>STATEMENT OF FACTS</u>

18.   PLAINTIFF BRANDON HANKS, at all relevant times, is an employee of Defendant CITY OF SYRACUSE.

19.   PLAINTIFF BRANDON HANKS has been employed as a Syracuse Police Officer for approximately four (4) years. He has received multiple awards and commendations from the Mayor of Syracuse, NAACP and the Defendant CITY OF SYRACUSE for his commitment to professionalism and community relations. During the Summer of 2019, PLAINTIFF BRANDON HANKS initiated a community outreach program, known as "Pull Up Challenge," wherein Officer Hanks posed a challenge to individual young people of Syracuse to play a game of one-on-one basketball against him while he is dressed in his full police uniform. If the young person wins, they would receive a free pair of sneakers while if they lose, they must perform pushups. PLAINTIFF BRANDON HANKS recruited NBA star, Rajon Rondo, to participate in this outreach program by donating twenty-five (25) pairs of sneakers.[1]



---
[1] https://www.youtube.com/watch?v=YjbbB0ilCP8

20.    PLAINTIFF BRANDON HANKS has received national recognition for his progressive approach to policing and to his commitment to his community, including receiving the Mayor's Achievement Award. PLAINTIFF BRANDON HANKS is currently employed as a Police Officer assigned to the Gun Violence Suppression Detail and is the only African American in this unit. Due to his high level of performance, his direct supervisor Lieutenant Donald Patti, has recommended him for a transfer to a more prestigious position as a member of the Gang Violence Taskforce. As a very driven and committed police officer, PLAINTIFF BRANDON HANKS perceived this as an opportunity to advance his career. In response to his pending promotion, DEFENDANTS DEPUTY CHIEF RICHARD TRUDELL, TIMOTHY GAY, COLIN HILLMAN, DEREK MCGORK, WILLIAM KITTELL, ANOTHONY FIORINI, DAVID METZ, and SHAWN HAUCK, entered into a conspiracy to deprive PLAINTIFF BRANDON HANKS of this career advancement. There are currently no African American members of the Gang Violence Taskforce and the DEFENDANTS have taken extraordinary steps to deprive PLAINTIFF BRANDON HANKS of this promotion by engaging in a racially motivated campaign to destroy his career by publishing a memorandum that included falsehoods based upon the fabrication of results derived from an unjustified and constitutionally infirm covert surveillance campaign.

21.    In furtherance of their conspiracy, DEFENDANTS' DEPUTY CHIEF TRUDELL, TIMOTHY GAY, COLIN HILLMAN, DEREK MCGORK, WILLIAM KITTELL, ANOTHONY FIORINI, DAVID METZ, and SHAWN HAUCK informed BRANDON HANKS they were initiating a surveillance campaign that would monitor his whereabouts and communications on account of their fabricated and unfounded claim that a gang had placed a 'hit' on his life. DEFENDANTS knew at all times that such was a rouse in order to permit them to conjure incriminatory evidence that they would use to not only undermine BRANDON HANKS' promotion to Gang Violence Taskforce, but to destroy his career as a police officer in its entirety.

DEFENDANTS fallacious and racially motivated published memorandum is attached hereto as Exhibit 2.

22.     DEFENDANTS, and each of them, maintained discriminatory hiring practices to avoid hiring minorities. The CITY OF SYRACUSE, as well as SPD's leadership, including DEFENDANTS CHIEF BUCKNER and DEPUTY CHIEF TRUDELL have perpetuated such practices despite the CITY OF SYRACUSE still being a party to a March 27, 1980 consent decree with the U.S. Department of Justice, mandating DEFENDANT CITY OF SYRACUSE to affirmatively correct its police department's exceedingly racially disparate staffing with an almost complete absence of African American police officers despite that population comprising 30% of the citizens of Syracuse. As of June 26, 2020: "Black officers still represent just 9% of a police force that is 30% Black…" "Of the 109 new officers sworn in since 2018, only 14 — or 12.8% — have been African American, according to data the police department presented Thursday. Despite a 40-year-old federal consent decree…."[2] Upon information and belief, as of the date of this lawsuit, the SPD employs approximately Four Hundred and Twenty police officers only a mere Fifteen are African American, which represents 3.5%. This is a violation of the 1980 Consent Decree mandating that the number of African American officers mirror the African American population in Syracuse which is approximately 30%. In order to comply with the federal mandate of 1980, the SPD must hire and maintain a minimum of approximately One Hundred and Twenty-Six African American police officers. The SPD has failed to carry out their mandated duty since the inception of the Consent Decree of 1980. Officer Brandon Hanks hereby requests a Declaratory

---

[2] https://www.syracuse.com/news/2020/06/syracuse-looks-to-hire-more-black-police-but-this-is-not-a-very-popular-profession-chief-says.html

Judgment commanding the SPD to immediately comply with the federal mandate "with all deliberate speed."3

23.     On March 27, 1980, the City of Syracuse entered into a Consent Decree with the Federal Government concerning, among other things, the racial disparity within the Syracuse Police Department. The Consent Decree, ¶ 13 states, in part:

>     Subject to the provisions of this decree, the City desires to and shall consider applications for employment in the fire and police departments from any person who meets the applicable criteria for any given position without regard to such person's race or sex…  (A copy the Consent Decree of March 27, 1980 is attached hereto as Exhibit 3.)

24.     Similarly, despite wholly ignoring the terms of its May 27, 1980 Consent Decree by persisting in its racially disparate hiring and promotion practices, the SPD, in response to the murder of George Floyd, and the ensuing massive response to its blatant and unyielding racist underpinnings, on June 19, 2020, CITY OF SYRACUSE Mayor Ben Walsh executed an Executive Order addressing, among other things, the racial disparity in the City of Syracuse Police Department. Among other provisions, including the spirit of the existing Executive Order, ¶ 14 states the SPD shall:

25.     Continue to review and upgrade the department's recruitment, screening, and hiring practices, with an aim to increase the diversity of the department's membership.  (A copy of this Executive Order is attached hereto as Exhibit 4.)

---

3 *Brown v. Bd. of Educ.,* 347 U.S. 483, (1954).

26.     Despite the Consent Decree and the Executive Order, and more commensurate with the reality of the lack of representation of African Americans in the SPD, PLAINTIFF BRANDON HANKS is the only African American working as a member of the Gun Violence Suppression Detail. Further, there are currently no African American members on the Gang Violence Taskforce, who are all European Americans.

27.     While his transfer to the exclusively all European American Gang Violence Taskforce was pending, DEFENDANTS actively engaged in a scheme that was intentionally directed at undermining and 'railroading' PLAINTIFF BRANDON HANKS' appointment to the Gang Violence Taskforce. The scheme entailed scouring PLAINTIFF BRANDON HANKS' social media accounts, as well as surreptitious surveillance of his personal life, with the concerted aim of locating anything that could serve as an impediment to his appointment. DEFENDANTS concocted and fabricated a false record that would deprive PLAINTIFF BRANDON HANKS of advancing his career by serving on the Taskforce. As part of DEFENDANTS' conspiracy and scheme, DEFENDANT DEPUTY CHIEF RICHARD TRUDELL ordered DEFENDANT CAPTAIN GAY to conduct a bogus investigation of PLAINTIFF BRANDON HANKS.

28.     DEFENDANT DEPUTY CHIEF RICHARD TRUDELL's racist proclivities were unconcealed and publicly manifested, when in the past, he had been blatantly forthcoming as to his racist views by unashamedly admitting on record that he irremissibly uses the terms 'niggers' to connote African Americans and 'spics' for Hispanic Americans:

13                Mr. Trudell, have you ever used the words

14    "bitch," "broad" --

15        A    Yes.

16        Q    -- to refer to women?

17        A    Yes.

18        Q    Have you ever heard anyone using those

19    words on duty or off duty that you work with?

20                     MS. O'CONNOR:   Objection.

21        A    Yes.

22        Q    Have you ever heard anyone you work with

23    using derogatory terms referring to race or ethnic

24    origin?

25                     MS. O'CONNOR:   Objection.

```
 1                    RICHARD TRUDELL

 2        A     Yes.

 3        Q     And have you used those terms?

 4        A     Not at work.

 5        Q     Have you used them off duty?

 6        A     Yes.

 7        Q     What words have you used?

 8                    MS. O'CONNOR:  Objection.

 9        A     In the past I've used the word "nigger,"

10   "bitch," that sort of thing.

11        Q     You ever use the term "spic"?

12        A     Yes.  Not at work.

13        Q     In reference to Latino individuals?

14        A     I'm not sure what the question is.

15        Q     Have you used the term "spic" in

16   reference to Latino individuals?

17        A     Yes.

18        Q     Do you know what Ms. Dotson's ethnic

19   origin is?

20        A     No, I don't.

21        Q     Do you know what a Hispanic is?

22        A     Yes.

23        Q     Would you describe Ms. Dotson as

24   Hispanic?

25        A     No.
```

1                    RICHARD TRUDELL

2        Q      Would you describe Mr. Dotson as African

3   American?

4        A      Yes.

5        Q      Have you ever referred to African

6   Americans as niggers?

7        A      Yes.

8        Q      Have you ever referred to Latinos as

9   spics?

10       A      Yes.

11       Q      And you supervise this woman?

12       A      Yes.

13       Q      And she's Latino?

14       A      I did not know that.

15              MS. BOSMAN:  I got to take a

16                 break.

17                 (Whereupon, a brief recess was

18                 taken.)

19              MS. BOSMAN:  Shannon, for the

20                 record, we're suspending the

21                 deposition at this time.  My client is

22                 unable to continue.  Let the record

23                 reflect that she's highly upset,

24                 highly distraught and she does not

25                 wish to continue at this time.

See Attached hereto, as Exhibit 5, is a true and correct copy of the Deposition Transcript of Richard Trudell, dated, June 24, 2011.

29.     Based upon the elicit surveillance and investigation ordered by DEFENDANT DEPUTY CHIEF RICHARD TRUDELL and carried out by DEFENDANT OFFICERS, on or about April 8, 2021, Captain TIMOTHY GAY published an internal memorandum whereby he falsely accused PLAINTIFF BRANDON HANKS, Inter Alia, of the following: "association with known gang members-felony and RICO…," associated with "gang members, convicted criminals, narcotics trafficking…," affiliated with local gangs and involved in gang violence, being a passenger in a vehicle with known gang members during a traffic stop, and most egregiously, in uniform while listening to "rap music." DEFENDANTS have all conspired to deprive PLAINTIFF BRANDON HANKS of his rightful advancement within the Police Department based upon his race and upon malicious accusations that were completely and utterly manufactured for such purpose. Attached hereto as Exhibit 2 is a true and correct copy of DEFENDANT CAPTAIN GAY's Memorandum.

30.     As the above allegations make plain, PLAINTIFF BRANDON HANKS has been treated less favorably than similarly situated European American employees with respect to the terms and conditions of his employment, i.e., a denial of promotional and training opportunities. DEFENDANT CITY OF SYRACUSE has disparately treated PLAINTIFF BRANDON HANKS by applying its policies and rules in a constitutionally prohibited fashion by explicitly treating PLAINTIFF BRANDON HANKS in a less favorable manner than his similarly situated European American Caucasian colleagues. Such application of the CITY OF SYRACUSE's long standing policy, practice and custom has resulted in the withholding of training and promotional opportunities to PLAINTIFF BRANDON HANKS, as well as the residual enhancements in his pay structure and overall prestige.

COMPLAINT FOR BRANDON HANKS

31.     Throughout PLAINTIFF BRANDON HANKS' employment, he has experienced and witnessed other African American employees subjected to retaliation and discriminatory treatment, including diminished opportunities with respect to training and promotion. In affirmatively perpetuating such policy, practice and custom, DEFENDANTS have persistently and intentionally failed to take remedial actions to stop and prevent such unlawful conduct.

32.     The evidence adduced above, as well as the applicable law, the 1980 DOJ Consent Decree and June 2020 Executive Order demonstrate that DEFENDANTS owed a specific duty to BRANDON HANKS and to other African Americans, as well as other protected classifications to address their long-standing discriminatory employment policies. Despite such specific duties, the CITY OF SYRACUSE and DEFENDANT CHIEF BUCKNER, through DEFENDANTS DEPUTY CHIEF TRUDELL perpetuated the Department's discriminatory policies, practices and customs of discrimination by permitting and sanctioning DEFENDANT OFFICERS to engage in explicitly hostile and discriminatory conduct that led the European American DEFENDANT OFFICERS to believe that their conduct was permissible.

33.     PLAINTIFF BRANDON HANKS maintains that he was targeted by Supervisors DEFENDANTS TIMOTHY GAY, COLIN HILLMAN and DEREK MCGORK, as well as his peers within the Gang Violence Taskforce. PLAINTIFF BRANDON HANKS maintains that DEFENDANTS' retaliatory conduct was comprised of being falsely and maliciously designated a "gang member," a "narcotics trafficker," "gang affiliated," and accused of being a person who listens to "rap music."

34.     Further, upon filing a Notice-of-Claim in this case DEFENDANTS immediately retaliated against PLAINTIFF BRANDON HANKS by taking disciplinary action against him. This disciplinary action was intended to cover-up DEFENDANTS' illegal and discriminatory behavior and to discourage PLAINTIFF BRANDON HANKS and/or  any similarly situated

employee of the CITY OF SYRACUSE's Police Department from coming forward with complaints of racial discrimination.

35.     On or about March 24, 2021, DEFENDANTS seized upon PLAINTIFF BRANDON HANKS' social media post as grounds for disciplining him despite the video being posted on Mr. HANKS personal social media page while off-duty and physically located in his own private vehicle. BRANDON HANKS received a verbal reprimand and ordered to undergo counseling. The video that DEFENDANTS relied upon to support its reprimand shows PLAINTIFF BRANDON HANKS wearing a turtleneck with the letters "SPD" while rap music can be heard playing from an outside source. In response to DEFENDANTS' reprimand, PLAINTIFF BRANDON HANKS  notified the Police Department that he was not the one playing the rap music, but accepted his discipline and immediately removed the social media post.

36.     As a direct result of filing his initial Notice-of-Claim on or about June 23, 2021 that highlighted the discriminatory culture that prevailed within the Syracuse Police Department, as well as the racially motivated and constitutionally infirm surveillance and fabricated evidence compiled in their April 8, 2021 memorandum, whose purpose was to disqualify BRANDON HANKS from a promotion to the Gang Violence Taskforce, DEFENDANTS immediately retaliated against Mr. HANKS  by disciplining him a second time for a social media post that included a rap song playing in the background that referenced the word "nigga(s)."

37.     Again, in or about July 2, 2021, in response to PLAINTIFF BRANDON HANKS' Notice-of-Claim on or about June 23, 2021, DEFENDANTS SUSAN IZZO, JOSEPH CECILE, and KENTON BUCKNER disciplined PLAINTIFF BRANDON HANKS on the second occasion for the same offense of playing rap music, this time with an enhanced level of discipline comprising a written reprimand included in his personnel file. By resorting to a second reprimand in temporal proximity to BRANDON HANKS' notice of claim filing for conduct that had already

been disciplined, DEFENDANTS' actions can only be interpreted as a retaliatory gesture for the complaints BRANDON HANKS levied against the SPD for its racist culture and the vicious and racist attacks exacted upon him intended to thwart his promotion. The letter of written reprimand is attached hereto as Exhibit 6.

38.     DEFENDANT ANN CLARK serves the Syracuse Police Department as the department's Wellness Officer. As part of her duties ANN CLARK provides mental and physical healthcare for Syracuse Police Department personnel. Aware of the tremendous psychological strain that DEFENDANTS' actions had upon PLAINTIFF BRANDON HANKS, ANN CLARK reached out to him in the course of her employment, and provided him with confidential mental health counseling. Thereafter, DEFENDANT ANN CLARK breached her mandated duty of confidentiality that she owed PLAINTIFF BRANDON HANKS by helping to spread misinformation and perpetuate the personal attacks against him on social media. Attached hereto as Exhibit 7 is a disparaging social media posting disseminated on a law enforcement home page that referred to PLAINTIFF BRANDON HANKS and which ANN CLARK, by 'liking' such posting, affirmatively communicated that she was in agreement with its content. By affirming the social media posts content, DEFENDANT ANN CLARK had breached her duty of confidentiality that she unequivocally owed PLAINTIFF BRANDON HANKS and as such, betrayed the trust that he had placed in her by publicly supporting unsubstantiated attacks on him on social media.

39.     DEFENDANT BRANDON FOUGNIER is a Sergeant with the Syracuse Police Department and serves in the Gang Violence Taskforce under CAPTAIN GAY's command. BRANDON FOUGNIER was aware of the fact that PLAINTIFF BRANDON HANKS works as an assistant basketball coach for Cicero-North Syracuse High School. In an attempt to undermine PLAINTIFF BRANDON HANKS' coaching position, DEFENDANT FOUGNIER sent a text message to the Head Basketball Coach at Cicero-North Syracuse High School referring to

PLAINTIFF BRANDON HANKS as "boy" and accusing him of playing the "race-card." DEFENDANT FOUGNIER''s actions were intentional and malicious and meant to harm PLAINTIFF BRANDON HANKS. The text message sent by the DEFENDANT FOUGNIER is attached hereto as Exhibit 8.

**FEDERAL CLAIMS**

**COUNT I**
**(TITLE VII VIOLATIONS)**
**RACE DISCRIMINATION, HARASSMENT, RETALIATION, HOSTILE WORK**
**ENVIRONMENT AND FAILURE TO PREVENT AND PROTECT FROM**
**DISCRIMINATION**
**(AGAINST ALL DEFENDANTS)**

40.     PLAINTIFF BRANDON HANKS hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

41.      DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, have engaged in illegal employment practices including, but not limited to, discrimination, creating a hostile work environment, and retaliation on account of Officer Brandon Hanks' race, all of which served to deny PLAINTIFF BRANDON HANKS of his federally guaranteed right to enter into contracts in the same manner as European American employees.

42.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, have discriminated against PLAINTIFF BRANDON HANKS with respect to the terms, conditions and privileges of his employment through the creation and toleration of a racially charged and hostile work environment.

43.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, created, maintained and perpetuated a severe and pervasive hostile work environment based on race, gender

and ethnicity which altered the terms and conditions of employment for Officer Brandon Hanks. Officer Brandon Hanks was denied a promotion and other benefits, terms and conditions of employment based on an animus against his race. DEFENDANTS, and each of them, afforded more favorable terms, conditions and benefits by DEFENDANTS herein, because DEFENDANTS, and each of them, exhibited an express positive preference to hire and promote European American police officers.

44.    DEFENDANTS, and each of them, are mandated under Title VII to not only protect Officer Brandon Hanks from discrimination, but also to prevent all forms of discrimination, including but not limited to, hostile work environment, harassment, disparate treatment, and retaliation. DEFENDANTS, and each of them, failed and breached their duty as mandated by Title VII by allowing this illegal employment conduct and practices to proliferate unabatedly in the workplace at SPD. Therefore, DEFENDANTS, and each of them, are liable for this breach of duty under State and Federal Law, including Title VII.

45.    DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, have authorized, ratified, encouraged and condoned illegal employment practices, including but not limited to, a racially hostile work environment, racial harassment, retaliation, racial stereotypes, and other disparate treatment by which African American persons are treated as inferior to European Americans. The racially hostile environment changed, and continues to change, the terms and conditions of PLAINTIFF BRANDON HANKS' employment.

46.    DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, including supervisors and management officials, participated in, and were aware of, encouraged, and condoned the racially hostile work environment, including discrimination and retaliation.

47.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, failed to train their employees, including PLAINTIFF BRANDON HANKS on the Department's purported anti-discrimination policy and reporting procedures.

48.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, through their agents and employees, have permitted European American employees to openly display racial animus against African American employees, including PLAINTIFF BRANDON HANKS.

49.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, engaged in a pattern and practice of systemic discrimination, retaliation and hostile work environment that was pervasive and severe, adversely affecting the terms and conditions of PLAINTIFF BRANDON HANKS' employment by promoting and reinforcing racial stereotypes and racial bias in the workplace.

50.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, rejected PLAINTIFF BRANDON HANKS repeated good faith complaints in opposition to the racial discrimination and racial harassment to which he, and other African American employees, were subjected. Attached hereto as Exhibit 9 is Officer Hanks' rebuttal and complaint of racial discrimination, retaliation and harassment in response to DEFENDANT CAPTAIN GAY's unfounded allegations supporting the denial of his promotion to the Gang Violence Taskforce.

51.     DEFENDANTS' CITY OF SYRACUSE, CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CAPTAIN TIMOTHY GAY and all DEFENDANTS, and each of them, retaliated against PLAINTIFF BRANDON HANKS' engagement in protected activities resulting in racial

discrimination, hostile work environment, retaliation and harassment. In response to filing an initial Notice-of-Claim with the City of Syracuse on or about June 23, 2021, wherein PLAINTIFF BRANDON HANKS exposed the racially discriminatory policies of his employer, the SPD, DEFENDANTS immediately proceeded to unfairly discipline him a second time for exactly the same offense that he had been discipline for earlier, but with a higher-level of reprimand. This second disciplinary action, a violation of due process under the Fourteenth Amendment of the U.S. Constitution as well as double jeopardy, was in retaliation for complaints made by PLAINTIFF BRANDON HANKS' concerning the racism, retaliation, hostile work environment and harassment that he himself incurred, as well as the overall racism in the Police Department. Attached hereto as Exhibit 6 is a copy of the second disciplinary action taken against the PLAINTIFF BRANDON HANKS.

52.     DEFENDANTS, and each of them, engaged in unlawful actions constituting a practice, pattern, custom and policy of allowing acts of racial harassment, racial discrimination, hostile work environment and retaliation in violation of its employees' state and federally protected rights. DEFENDANTS, in order to derail PLAINTIFF BRANDON HANKS, an African American, from advancement into the all-white Gang Violence Taskforce, undertook a covert investigation into BRANDON HANKS' life and published a memorandum constituting manufactured and fabricated racially stereotypical accusations about him, including, but not limited to, "gang affiliation," associating with "gang members," trafficking narcotics, fraternizing with gang members in a vehicle, engaging in conduct associated with gun violence and other "criminal activity," and most egregiously, being a person who listens to "rap music." The memorandum published by the DEFENDANTS is attached hereto as Exhibit 2.

53.     DEFENDANTS, and each of them, failed to take any prompt, remedial and effective action reasonably calculated to result in the prevention of and remedy of the racial

harassment, racial discrimination, hostile work environment and retaliation that PLAINTIFF BRANDON HANKS incurred.

54.     DEFENDANTS, and each of them, have caused PLAINTIFF BRANDON HANKS to suffer damages as follows:

      A.    Economic loss, including lost wages, lost benefits, pharmacy bills, medical bills, and other economic loss which can be quantified when ascertained.

      B.    Non-economic loss, including, but not limited to, pain, anxiety, inconvenience, mental distress, emotional distress, loss of enjoyment of life, humiliation, fear, discomfort, damage to health image, damage to career, spiritual injury, suffering and misery.

      C.    Punitive damages against all individual Defendants.

      D.    Attorney fees and costs.

55.     DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure PLAINTIFF BRANDON HANKS by displaying a conscious disregard to his safety, health, and rights under State and Federal law. DEFENDANTS' illegal conduct entitles PLAINTIFF BRANDON HANKS to punitive damages.

56.     The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF prays for a judgment as hereinafter set forth.

### COUNT II
### 42 U.S.C. § 1983 MONELL CLAIM
### (AS TO DEFENDANT CITY OF SYRACUSE)

57.     PLAINTIFF BRANDON HANKS hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

58.    At the time of the events enumerated above, each individual DEFENDANT was acting under color of all the laws and regulations of the State of New York and the CITY OF SYRACUSE. The CITY OF SYRACUSE has a policy, custom, practice and pattern of conduct in place that enables its managing agents, employees and police officers to act with deliberate disregard for constitutionally protected rights of persons, including Officer Brandon Hanks.

59.    THE CITY OF SYRACUSE's  policy, custom, practice and pattern of conduct, includes, but is not limited to, tolerating misconduct by its police officers, encouraging misconduct by failing to adequately supervise, discipline and train its police officers, permitting the perpetuation of a hostile work environment aimed at its African American police officers, purposefully limiting the number of African American police officers hired to the Department, intentionally failing to promote its African American police officers to coveted taskforces and supervisory positions within the Department, as well as pressuring its African American police officers to engage in excessive force against African American citizens as a means of garnering favor and the condition for obtaining promotion and advancement in the Department. As an example of DEFENDANT's tolerating misconduct by its command staff, DEFENDANT DEPUTY CHIEF RICHARD TRUDELL under oath admitted to calling African Americans "niggers;" calling women "bitches;" and calling Hispanic Americans "spics," as evidenced in Exhibit 5 attached herein.

60.    DEFENDANTS CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY  disciplined Officer Brandon Hanks, falsely and pretextually asserting that he was listening to rap music where "racial slang (nigga(s) is being played." In contrast and as a further example of disparate treatment and discrimination, DEFENDANTS command staff have taken no disciplinary action over the past eleven years against the now Deputy Chief Richard Trudell. Rather, DEFENDANT CITY OF

SYRACUSE and the command staff of the SPD promoted DEFENDANT DEPUTY CHIEF RICHARD TRUDELL thereby endorsing, encouraging, and ratifying DEFENDANT DEPUTY CHIEF RICHARD TRUDELL's animus and hostility, the basis of the hostile work environment in this action, against the majority of the people of Syracuse.

61.     PLAINTIFF BRANDON HANKS  asserts that the CITY OF SYRACUSE is liable for any constitutional torts committed by the individual DEFENDANT OFFICERS because the CITY OF SYRACUSE maintains a custom, policy, pattern and practice of failing to exercise reasonable care in training, supervising and hiring its officers. PLAINTIFF BRANDON HANKS further alleges the CITY OF SYRACUSE maintains a custom, policy, pattern and practice of inaction regarding disciplining police officers for racial discrimination; and a custom, policy, practice and pattern of failing to discipline its police officers for violating the constitutional rights of its African American citizens. PLAINTIFF BRANDON HANKS  also alleges that the CITY OF SYRACUSE has an inadequate racial discrimination policy, which does not clearly draw a bright line defining constitutional violations for racial discrimination, hostile work environment, harassment and retaliation. The CITY OF SYRACUSE'S policy, custom, practice and pattern were a motivating factor that caused a deprivation of PLAINTIFF BRANDON HANKS' constitutional rights.

62.     As the CITY OF SYRACUSE has an urgent need for a clear policy regarding racial discrimination, hostile work environment, harassment and retaliation, PLAINTIFF BRANDON HANKS, as a request enumerated as part of his damages, requests a Declaratory Judgment that the CITY OF SYRACUSE's policy on racial discrimination is inadequate and presents clear and present danger of deprivation of the constitutional rights of persons who are employed by the CITY OF SYRACUSE. Further, PLAINTIFF BRANDON HANKS requests a Declaratory Judgment that the City of Syracuse is in violation of the Consent Decree of 1980.

63.     Under *Monell*, local governments and their agencies can be sued as "persons" under § 1983 and may be liable where a government policy or custom gives rise to a constitutional deprivation. A "custom" does not require official sanction; instead, a custom "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Thus, the elements of a *Monell* claim include: 1) an official policy or custom that, 2) causes the plaintiff to be subjected to, 3) a deprivation of a constitutional right.

64.     An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; and (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.

65.     Based upon the record of this case, investigations, research, complaints to the CITY OF SYRACUSE, and newspaper reports, as well as claims of racial discrimination, harassment and retaliation against the CITY OF SYRACUSE, there exists a reasonable showing of a  pattern, practice, custom and policy of the CITY OF SYRACUSE failing to respect, uphold and enforce the constitutional rights of the  CITY's African-American employees. DEFENDANTS'  failure to discipline, train and supervise the police officers under their command has resulted in violations of PLAINTIFF BRANDON HANKS' civil rights as well as a sizeable number of other African-American police officer and non-police officer employees of the CITY OF SYRACUSE.

66.     As further evidence of the SPD's disparate treatment of its African American police officers, upon information and belief, DEFENDANTS CITY OF SYRACUSE, DEFENDANTS' CHIEF BUCKNER, DEPUTY CHIEF TRUDELL and other Supervisory SPD police officers

perpetuate, encourage, and arrange promotional opportunities to its African American officers if they were to engage in excessive force against African Americans in the community and suspects in order to prove their allegiance to the Department. In exchange and as a quid-pro-quo arrangement, SPD leadership would offer said Officers advancement and promotional opportunities within the Department. An example of this pattern and practice of encouraging African American police officers to harass, arrest and brutalize with excessive force innocent African American, and particularly African American youth, the following video depicts African American Officer Leonard Brown accompanying his European American colleagues harassing innocent Black youth, who at all times were engaged in lawful conduct.[4] The current paradigm of policing, a policy, practice and custom of the SPD, is in stark contrast to the paradigm shift that Officer Brandon Hanks effectively and compassionately implements in his community policing. The same basketball court in Skiddy Park where 7-8 European American police officers and Leonard Brown are seen harassing, brutalizing, traumatizing and arresting Black youth, is the very same Park where Officer Brandon Hanks challenges these same youth to games of one-on-one basketball as part of his Pull-up Challenge.

67.     DEFENDANTS' CHIEF BUCKNER, DEPUTY CHIEF TRUDELL's actions and inactions as the government officials responsible for establishing municipal policies related to discipline, training and supervising the CITY OF SYRACUSE Police Department have been the motivating factors in the deprivations of constitutional rights of PLAINTIFF BRANDON HANKS, as well as many other victims of racial discrimination in the Department.

68.     The CITY OF SYRACUSE's POLICE CHIEF BUCKNER's inactions, resulting in a policy of inaction with respect to the supervision and training of his police officers in how to

---

[4] https://www.youtube.com/watch?v=6NPmudV7rck

protect the constitutional rights of African American police officers under his command was a direct and proximate cause of the constitutional rights violations that PLAINTIFF BRANDON HANKS incurred. The CITY OF SYRACUSE's POLICE CHIEF BUCKNER's policy, custom and practice of inaction, lack of discipline and lack of training of his officers led his DEFENDANT POLICE OFFICERS to undertake an illegal and predetermined surveillance campaign and investigation on PLAINTIFF BRANDON HANKS that resulted in DEFENDANT POLICE OFFICERS fabricating accusations rendered in a published memorandum concluding that PLAINTIFF BRANDON HANKS  was a "gang affiliated," narcotics trafficker who associated with those engaged in criminal activities while listening to "rap music."

69.     The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

70.     Detailed evidence of the CITY OF SYRACUSE's policy, custom and practice of racial discrimination and failure to train and discipline its officers will be presented after discovery in this action.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

### COUNT III
### 42 U.S.C. § 1981 VIOLATIONS
### RACIAL HARASSMENT, DISCRIMINATION & RETALIATION
### (AS TO DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF RICHARD TRUDELL, DEPUTY CHIEF JOSEPH CECILE AND CAPTAIN TIMOTHY GAY)

71.     PLAINTIFF BRANDON HANKS hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

72.     DEFENDANTS, and each of them, denied PLAINTIFF BRANDON HANKS, an African American, the right to contract in the same manner as European Americans on account of his race. DEFENDANTS, and each of them, retaliated and discriminated against PLAINTIFF BRANDON HANKS by denying him the terms, conditions and privileges of his employment through the creation and toleration of a racially charged and hostile work environment. This racially hostile environment included, but is not limited to, racial harassment, racial stereotypes, and other disparate treatment by which African American persons were treated as inferior and unworthy of the rights afforded all men and women under state, federal and constitutional law.

73.     DEFENDANTS, and each of them, through their agents and employees, denied PLAINTIFF BRANDON HANKS' right to contract in the same manner as European Americans by maintaining an intolerable hostile work environment fueled by racial animus against African Americans.

74.     As set out in detail above, DEFENDANTS have retaliated against PLAINTIFF BRANDON HANKS and other African American employees who have sought and were not afforded promotions. The DEFENDANTS' conduct was motivated by retaliation on account of his race and, at least in part, BRANDON HANKS' progressive community policing and community outreach. The unlawful actions of the DEFENDANTS, as set forth above, constitute a practice, pattern, custom and policy of DEFENDANTS for permitting acts of racial harassment, racial discrimination and retaliation in violation of their employees' state and federally protected rights.

75.     PLAINTIFF BRANDON HANKS was hired by DEFENDANTS on or about December 5, 2016 as a Police Officer and is currently still employed by DEFENDANT CITY OF SYRACUSE.

76.     PLAINTIFF BRANDON HANKS has been treated less favorably than European American employees with respect to the terms and conditions of his employment where DEFENDANTS' employment rules and policies were applied differently to PLAINTIFF BRANDON HANKS despite being similarly situated with his European American counterparts.

77.     During the course of his employment, PLAINTIFF BRANDON HANKS was denied proper training and promotions based on his African American race.

78.     Throughout PLAINTIFF BRANDON HANKS' employment in the Gun Violence Suppression Unit, DEFENDANTS hired not a single African American supervisor which otherwise comports with the DEPARTMENT's prevailing custom and practice of having the entirety of the DEPARTMENT's upper management being European Americans despite placing an African American, DEFENDANT KENTON BUCKNER as its chief of police.

79.     Upon information and belief, DEFENDANT CITY OF SYRACUSE does not post vacancy announcements for any positions, including Supervisory and/or Lead Persons for SPD's specialized units, the CITY OF SYRACUSE perpetuates a practice and a custom of selecting less qualified European American employees for these positions. This custom and practice by DEFENDANT CITY OF SYRACUSE substantially precludes African American employees any opportunities for promotions.

80.     PLAINTIFF BRANDON HANKS and other African Americans are given lower evaluations than similarly situated European American employees, resulting in lower wage increases than the European American employees where Police Department pay increases are expressly tied to employment evaluations and promotions.

81.     The lower evaluations given to the African American employees, including PLAINTIFF BRANDON HANKS, results in African American employees receiving lower pay

increases and promotions as compared to the Department's less qualified European American employees.

82.     PLAINTIFF BRANDON HANKS has been denied promotions and training for positions which would have afforded him greater pay and prestige.

83.     DEFENDANT CITY OF SYRACUSE continues to employ the primary offenders who subjected PLAINTIFF BRANDON HANKS to discrimination, hostility, withholding of training, promotions, and mistreatment.

84.     PLAINTIFF BRANDON HANKS has been subjected to racially charged and stereotypical comments held and made by his European American employee colleagues. The comments include, but are not limited to, the following: "gang member," "narcotics trafficker," "gang affiliated," a "rap music listener," an associate with those who fire gun shots in the City of Syracuse, a fraternizer with gang members, and a partaker in "criminal activity."

85.     As a result of PLAINTIFF BRANDON HANKS filing a Notice-of-Claim apprising DEFENDANTS of their racially discriminatory conduct and the discriminatory culture pervasive throughout the Syracuse Police Department, DEFENDANTS immediately retaliated against him by taking disciplinary action intended to punish him for exercising his right to access a court of law, as well as to dissuade any other similarly situated individuals from coming forward with complaints. Additionally, DEFENDANTS sought to cover-up its illegal and racist activities by creating infractions in which to charge BRANDON HANKS. Despite having already cited PLAINTIFF BRANDON HANKS for conduct under the DEPARTMENT's disciplinary matrix, DEFENDANTS cited BRANDON HANKS a second time for the same infraction after determining that he filed a notice-of-claim against DEFENDANTS. Under the second filing, DEFENDANTS inflated the level of discipline to a more serious written reprimand.

86.     The above racially derogatory comments, slurs and retaliation are severe and pervasive and have changed the terms and conditions of PLAINTIFF BRANDON HANKS' employment.

87.     The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

88.     DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure PLAINTIFF by displaying a conscious disregard to PLAINTIFF BRANDON HANKS' safety, health, and constitutional rights. DEFENDANTS illegal conduct entitles PLAINTIFF to punitive damages only against individual DEFENDANTS.

WHEREFORE, PLAINTIFF BRANDON HANKS pray for a judgment as hereinafter set forth.

**COUNT IV**
**42 U.S.C. § 1983 VIOLATIONS**
**FIRST AMENDMENT FREEDOM OF SPEECH**
**(AGAINST ALL DEFENDANTS)**

89.     PLAINTIFF BRANDON HANKS  hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

90.     The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

91.     PLAINTIFF BRANDON HANKS alleges that DEFENDANTS violated his First Amendment Right of Free Speech by scouring and searching through his Social Media accounts

and surveilling his personal life and by using statements made by him, along with his enjoyment of rap music, as evidence for denying him a promotion because of his privileged speech.

92.     On or about March 24, 2021, DEFENDANTS searched and seized upon PLAINTIFF BRANDON HANKS' social media post as grounds for disciplining him despite the video being posted on Mr. HANKS personal and private social media page while off-duty and physically located in his own private vehicle. BRANDON HANKS received a verbal reprimand and ordered to undergo counseling. The video that DEFENDANTS relied upon to support its reprimand shows PLAINTIFF BRANDON HANKS wearing a turtleneck with the letters "SPD" while rap music can be heard playing from an outside source. In response to DEFENDANTS' reprimand, PLAINTIFF BRANDON HANKS  notified the Police Department that he was not the one playing the rap music, but accepted his discipline and immediately removed the social media post.

93.     Again, in or about July 2, 2021, in response to PLAINTIFF BRANDON HANKS' Notice-of-Claim on or about June 23, 2021, DEFENDANTS SUSAN IZZO, JOSEPH CECILE, and KENTON BUCKNER disciplined PLAINTIFF BRANDON HANKS on the second occasion for the same offense of playing rap music, this time with an enhanced level of discipline comprising a written reprimand included in his personnel file. By resorting to a second reprimand in temporal proximity to BRANDON HANKS' notice of claim filing for conduct that had already been disciplined,  DEFENDANTS' actions can only be interpreted as a retaliatory gesture for the complaints BRANDON HANKS levied against the SPD for its racist culture and the vicious and racist attacks exacted upon him intended to thwart his promotion. The letter of written reprimand is attached hereto as Exhibit 6.

94.     DEFENDANTS' conduct was a trespass Ab Initio, intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of

PLAINTIFF BRANDON HANKS. DEFENDANTS' conduct warrants punitive damages to protect the public in an amount according to proof.

95.     The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

**COUNT V**
**42 U.S.C. § 1983 VIOLATIONS**
**FOURTH AMENDMENT INVASION OF PRIVACY**
**(AS TO ALL DEFENDANTS)**

96.     PLAINTIFF BRANDON HANKS hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

97.     DEFENDANTS invaded the privacy of PLAINTIFF BRANDON HANKS when DEFENDANTS conspired to scour, search and seize  PLAINTIFF BRANDON HANKS' personal life with the intention of compiling evidence to satisfy their intentional and malicious deprivation of his constitutional rights. DEFENDANTS subjected PLAINTIFF BRANDON HANKS to unwarranted surveillance resulting in fabricating multiple accusations against him without his consent, permission or agreement. This invasion into the personal life of PLAINTIFF BRANDON HANKS was unwelcomed. DEFENDANTS conducted a covert and illegal invasion into the PLAINTIFF's personal life without consent or the knowledge of PLAINTIFF BRANDON HANKS, nor with probable cause, reasonable suspicion, or a warrant signed by a court of law.

98.     DEFENDANT ANN CLARK used her unique position as a mental health provider to solicit information from PLAINTIFF BRANDON HANKS whose confidential interaction she then violated by publicly affirming disparaging social media posts, thus violating PLAINTIFF

BRANDON HANKS' privacy, as well as breaching her duty to hold her interactions with BRANDON HANKS as confidential.

99.     DEFENDANTS' invasion of privacy caused PLAINTIFF BRANDON HANKS great distress, humiliation, injuries and harm and was a major invasion of his privacy. DEFENDANTS' conduct was intentional, malicious, fraudulent, and shows a reckless disregard of the constitutional rights, safety and health of PLAINTIFF BRANDON HANKS. DEFENDANTS' conduct warrants punitive damages in an amount according to proof.

100.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

## COUNT VI
## 42 U.S.C. § 1983 VIOLATIONS
## FOURTEENTH AMENDMENT PROPERTY, LIBERTY, EQUAL PROTECTION AND DUE PROCESS VIOLATIONS
## (AS TO ALL DEFENDANTS)

101.    PLAINTIFF BRANDON HANKS hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

102.    The Fourteenth Amendment of the United States Constitution, provides important rights that are applicable to the States: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." By engaging in a conspiracy to surreptitiously investigate and surveil PLAINTIFF BRANDON HANKS and publish fabricated accusations that BRANDON HANKS was a "gang affiliated," a "gang member," a "narcotics trafficker," and

someone who listens to "rap music," with the intention of depriving him of a career advancement, DEFENDANTS conduct rose to the level of deliberate indifference, thus violating PLAINTIFF BRANDON HANKS' Fourteenth Amendment Rights.

103.    By setting upon an intentional and blatant course of conduct as described above with the intention of depriving PLAINTIFF BRANDON HANKS' right to pursue his career and seek advancement, DEFENDANTS have violated his right to property under the Fourteenth Amendment.

104.    Pursuant to the Fourteenth Amendment of the United States Constitution, PLAINTIFF BRANDON HANKS has a right to equal protection of law.

105.    By engaging in a course of conduct intended to deprive PLAINTIFF BRANDON HANKS of his right to pursue his career and seek advancement on account of his race, DEFENDANTS have violated Officer Brandon Hanks' right equal protection of law.

106.    Pursuant to the Fourteenth Amendment of the United States Constitution, PLAINTIFF has a right to procedural due process of law.

107.    By engaging in a course of conduct of retaliation which deprived PLAINTIFF BRANDON HANKS his right to pursue his career and seek advancement without due process of law, DEFENDANTS have violated PLAINTIFF BRANDON HANKS' right to procedural and substantive due process of law.

108.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

**COUNT VII**
**42 U.S.C § 1981 VIOLATIONS**
**RIGHT TO CONTRACT**
**(AS TO DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL AND CAPTAIN TIMOTHY GAY)**

109.    PLAINTIFF BRANDON HANKS  hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

110.    DEFENDANTS, and each of them, have engaged in an illegal employment practice including, but not limited to, discrimination, creating a hostile work environment, retaliation, harassment and denying PLAINTIFF BRANDON HANKS his federally guaranteed right to enter into contracts free from racial discrimination and upon equal terms to the right to contract afforded European Americans.

111.    DEFENDANTS, and each of them, have intentionally discriminated against PLAINTIFF BRANDON HANKS with respect to the terms, conditions and privileges of his employment through the creation and toleration of a racially charged and hostile work environment.

112.    DEFENDANTS, and each of them, have authorized, ratified, encouraged and condoned illegal employment practices, including but not limited to, a racially hostile work environment, racial harassment, racial stereotypes, and other disparate treatment by which African American persons are treated as inferior to European Americans when in the employ of the CITY OF SYRACUSE. The racially hostile environment has changed, and continues to change, the terms and conditions of PLAINTIFF BRANDON HANKS' employment.

113.    DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY

GAY, and each of them, including supervisors and management officials, participated in, were aware of, encouraged, and condoned the racially hostile work environment.

114.    DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY,  and each of them, failed to train their employees, including PLAINTIFF BRANDON HANKS on its purported anti-discrimination policy and reporting procedures.

115.    DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY, and each of them, through their agents and employees, have allowed European American employees to openly display racial animus against African American employees, including PLAINTIFF BRANDON HANKS.

116.    DEFENDANTS, and each of them, engaged in a pattern and practice of systemic discrimination, and hostile work environment that was pervasive and severe, adversely affecting PLAINTIFF BRANDON HANKS' terms and conditions of employment by promoting and reinforcing racial stereotypes and racial bias in the workplace.

117.    DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF TRUDELL and CAPTAIN TIMOTHY GAY, and each of them, rejected PLAINTIFF BRANDON HANKS' repeated good faith complaints opposing the racial discrimination and racial harassment to which he and other African American employees were subjected, instead of complying with the law by preventing discrimination and harassment in the workplace, the DEFENDANTS, and each of them, launched a scorched-earth campaign of retaliation against PLAINTIFF BRANDON HANKS: 1. DEFENDANTS disciplined Officer Brandon Hanks the first time for his social media posts, 2. DEFENDANTS placed Officer Brandon Hanks under illegal surveillance without a probable cause or a warrant, 3.

DEFENDANTS publish a memorandum accusing Officer Hanks of being "gang affiliated," affiliated with "narcotics traffickers," having a "gang tattoo," associated with "criminal activity" including associations with "racketeering" and "RICO" and listing to "rap music," 4. DEFENDANTS then redisciplined Officer Brandon Hanks for the same offenses with an elevated level of discipline.

118.    DEFENDANTS, and each of them, retaliated against PLAINTIFF BRANDON HANKS because of he engaged in protected activities which resulted in DEFENDANTS exacting racial discrimination, harassment and retaliation directed at him.

119.    DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY, and each of them, engaged in unlawful actions constituting a practice, pattern, custom and policy of allowing acts of racial harassment, racial discrimination and retaliation in violation of its employees' state and federally protected rights.

120.    DEFENDANTS CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY, and each of them, failed to take any prompt and effective action reasonably calculated to result in the prevention and remedy of racial harassment, discrimination and retaliation of PLAINTIFF BRANDON HANKS.

121.    DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure PLAINTIFF BRANDON HANKS by displaying a conscious disregard to his safety, health, and constitutional rights. DEFENDANTS' illegal conduct entitles BRANDON HANKS to punitive damages hereinafter set forth.

122.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for judgment as hereinafter set forth.

**COUNT VIII**
**42 U.S.C § 1985 VIOLATIONS**
**CONSPIRACY**
**(AS TO ALL DEFENDANTS)**

123.    PLAINTIFF BRANDON HANKS hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

124.    Federal Law 42. U.S.C. §1985 provides in pertinent part: "If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties."

125.    PLAINTIFF BRANDON HANKS alleges that individual DEFENDANTS conspired to violate his rights as afforded him under the Fourth and Fourteenth Amendments by subjecting him to illegal surveillance and thereafter, fabricating and misconstruing evidence derived therefrom for the intended purpose of obstructing his promotion to SPD's Gang Violence Taskforce on account of his race which thereby deprived him of career advancement.

126.    By recruiting and ordering multiple members of the Gang Violence Taskforce to dig up unfavorable evidence on PLAINTIFF BRANDON HANKS for purposes of depriving him of his promotion to the Gang Violence Taskforce, DEFENDANTS' DEPUTY CHIEF RICHARD TRUDELL, TIMOTHY GAY, COLIN HILLMAN and DEREK MCGORK, upon reliance on DEFENDANT OFFICERS surveillance, investigation and official documentation, set upon a course of action intended to deprive PLAINTIFF BRANDON HANKS of his Fourth and Fourteenth Amendment Rights based upon racial animus, as evidenced by DEPUTY CHIEF RICHARD TRUDELL's sworn admission that he refers to African Americans as "niggers."

127.    Similarly, DEFENDANTS  CHIEF KENTOIN BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL, TIMOTHY GAY, COLIN HILLMAN, DEREK MCGORK and SUSAN IZZO, and each of them, carried out their above scheme, i.e., intentionally producing and highlighting evidence that would undermine PLAINTIFF BRANDON HANKS employment record in order to obstruct his promotion to the Gang Violence Task Force, by, in part, disciplining PLAINTIFF BRANDON HANKS for conduct that had been previously disciplined on or about March of 2021 and whose discipline the second time was enhanced to a written reprimand in his employment record. This second disciplinary action occurred in temporal proximity to PLAINTIFF BRANDON HANKS filing of a Notice-of-Claim against the named DEFENDANTS in this instant action. DEFENDANTS retaliated against PLAINTIFF BRANDON HANKS in order to punish him for coming forward with his complaints and to dissuade anyone else in the SPD from whistleblowing and revealing DEFENDANTS' illegal and racist custom, policy and conduct.

128.    The thrust of DEFENDANTS' scheme however was the fabrication and misrepresentation of the fruits of their unlawful surveillance and 'scorched earth' investigation of PLAINTIFF BRANDON HANKS' social media accounts wherein, in a memorandum submitted

to DEFENDANTS' CHIEF OF POLICE KENTON BUCKNER, DEPUTY CHIEF RICHARD TRUDELL, as well as other SPD DEFENDANT personnel serving in supervisory roles, deceitfully concluded that BRANDON HANKS was, along with other unfounded accusations, affiliated with gangs, was himself a gang member and narcotics trafficker, as well as someone who listened to "rap music."

129.    DEFENDANTS' conduct violated 42 U.S.C. §1985 because DEFENDANTS acted under the color of law in depriving PLAINTIFF BRANDON HANKS of his Fourth and Fourteenth Amendment Rights.

130.    DEFENDANTS, and each of them, in a joint enterprise, scheme and conspiracy, intentionally violated PLAINTIFF BRANDON HANKS' privacy, liberty and property rights by consciously disregarding and expressing a deliberate indifference to said rights, including most egregiously, their indifference to PLAINTIFF BRANDON HANKS' health, safety and risk of serious harm and conceivable death given his allegations against his colleagues in the SPD.

131.    DEFENDANTS' conduct was the direct and proximate cause of PLAINTIFF BRANDON HANKS' injuries, damages and harms including his economic and non-economic damages. The individual DEFENDANTS herein acted with deliberate indifference, malice, fraud and oppression in their total disregard of PLAINTIFF BRANDON HANKS' constitutional rights, health and safety. DEFENDANTS' intentional conduct resulting in the deprivation of PLAINTIFF BRANDON HANKS' constitutional rights entitle him to punitive damages against each of the individual DEFENDANTS.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

**COUNT IX**
**42 U.S.C § 1986 VIOLATIONS**
**FAILURE TO PROTECT**
**(AS TO DEFENDANTS CITY OF SYRACUSE AND CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL AND CAPTAIN TIMOTHY GAY)**

132.    PLAINTIFF BRANDON HANKS  hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

133.    42 U.S.C. § 1986 provides in pertinent part: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented;…"

134.    DEFENDANTS, and all of them, participated in a conspiracy, as defined under 42 U.S.C. § 1985, with an intended aim of depriving PLAINTIFF BRANDON HANKS of his promotion to the Gang Violence Taskforce as described herein.

135.    At any point in DEFENDANTS' conspiracy, each and every member, being apprised of the intended result, was capable of 'preventing or aid[ing] in the prevention' of the conspiracy but chose instead, to follow through with its intended result ensuring their liability under Section 1986.

136.    The actions of the DEFENDANTS, and each of them, was wanton, willful, malicious, illegal, and meant to deprive PLAINTIFF BRANDON HANKS, a colleague and fellow police officer, of his constitutional rights and rightfully deserved promotion predominantly and reprehensibly on account of his race.

137.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

## STATE CLAIMS

### COUNT X
### N.Y.S. EXC. LAW § 296 VIOLATIONS – DISCRIMINATION, HARASSMENT, RETALIATION AND HOSTILE WORK ENVIRONMENT (AS AGAINST CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL AND CAPTAIN TIMOTHY GAY)

138.    PLAINTIFF BRANDON HANKS realleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

139.    N.Y.S. Exc. Law § 296 (1)(h) states in part:

1. It shall be an unlawful discriminatory practice:
(h) For an employer, licensing agency, employment agency or labor organization to subject any individual to harassment because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, domestic violence victim status, or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.

140.    DEFENDANTS, and each of them, caused PLAINTIFF BRANDON HANKS to suffer the indignities of blatant and extreme racism every day while employed by DEFENDANTS.

141.    DEFENDANTS, and each of them, forced PLAINTIFF BRANDON HANKS to endure stereotypical racially charged designations and associations, such as "gang affiliated,"

"gang member," "narcotics trafficker," and a person who listens to "rap music," all of which were racially and discriminatorily directed at African Americans.

142.    The retaliation suffered by PLAINTIFF BRANDON HANKS includes, but is not limited to refusal to promote, failure to train, isolation and ridicule by his SPD supervisors and colleagues, extreme scrutiny and discipline intended to intimidate and harass. Further, in retaliation for filing a Notice-of-Claim, DEFENDANTS took immediate disciplinary action against PLAINTIFF BRANDON HANKS, despite already disciplining him for the same offenses. Such disciplinary action was taken against PLAINTIFF BRANDON HANKS as a means of covering up DEFENDANTS' illegal and racist practices, as well as to punish him for voicing matters of public concern as to SPD's racist work environment.

143.    DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure PLAINTIFF BRANDON HANKS by displaying a conscious disregard to his rights under state and Federal law, as well as his personal health and safety.

144.    DEFENDANTS illegal conduct entitles PLAINTIFF to punitive damages only against the named individual defendants.

145.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS AGAINST ALL DEFENDANTS)

146.    PLAINTIFF BRANDON HANKS realleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

147.    PLAINTIFF BRANDON HANKS asserts claims for Intentional Infliction of Emotional Distress. "To maintain a claim of IIED under New York law, the PLAINTIFF must establish '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Sylvester v. City of New York,* (S.D.N.Y. 2005). DEFENDANTS' actions were sufficiently extreme and outrageous to support PLAINTIFF'S IIED claim. To state an IIED claim, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Howell v. N.Y. Post Co.,* (N.Y. 1993).

148.    DEFENDANTS, and each of them, intentionally promoted, encouraged, endorsed and ratified the hostile work environment, the malicious racial discrimination, and the retaliation against PLAINTIFF BRANDON HANKS. DEFENDANTS, and all of them, intentionally failed to remedy and chose instead to allow these illegal employment practices to continue unabated and as such, refrained from implementing corrective and remedial actions to protect PLAINTIFF BRANDON HANKS from discrimination and a hostile work environment. DEFENDANTS knew, and were informed, that their inaction caused severe mental and severe emotional injuries and severe mental and emotional distress inflicted by DEFENDANTS vile conduct that should not, and is not, tolerated in our civilized society.

149.    DEFENDANTS, and each of them, permitted, and failed to correct such racial epithets and hostile conduct as outlined above.

150.   DEFENDANTS' actions were sufficiently extreme and indisputably so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.

151.   By reason of DEFENDANTS' discriminatory employment practices PLAINTIFF BRANDON HANKS has experienced harm, including loss of compensation, back and front pay, and other employment benefits, and continues to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

152.   DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure PLAINTIFF BRANDON HANKS by displaying a conscious disregard to his rights under state and Federal law, as well as his personal health and safety. DEFENDANTS illegal conduct entitles PLAINTIFF to punitive damages against only the individual DEFENDANTS.

WHEREFORE, PLAINTIFF prays for a judgment as hereinafter set forth.

## COUNT XII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO ALL DEFENDANTS)

153.   PLAINTIFF BRANDON HANKS realleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

154.   PLAINTIFF BRANDON HANKS also asserts a claim for negligent infliction of emotional distress (NIED) against DEFENDANTS, and each of them. Under New York State Law, there are two (2) ways to state a claim for negligent infliction of emotional distress: first, by alleging that the Defendant breached a duty owed to a plaintiff that "unreasonably endangered [his or her] safety," and second, by alleging that defendant's negligence threatened the plaintiff with physical harm, "and, as a result, [plaintiff] suffered emotional injury from witnessing the death or

serious bodily injury of an immediate family member." *Hiralall v. Sentosacare, LLC*, 2016 WL 1126530, 2016 U.S. Dist. LEXIS 35781, at *46 (S.D.N.Y. Mar. 18, 2016).

155.    PLAINTIFF   BRANDON   HANKS   alleges   claims   for   NIED   against DEFENDANTS, and each of them, under both theories of liability. The first type of liability, known as the "direct duty" theory, requires a plaintiff to show that the defendants owed a duty that was "specific to the plaintiff, and not some amorphous, free-floating duty to society."

156.    DEFENDANTS, and each of them, owed PLAINTIFF BRANDON HANKS a duty of care to be free from discrimination, harassment and hostile work environment. The evidence adduced above, as well as the applicable law demonstrates that DEFENDANTS owed a duty specifically to African-American employees, like PLAINTIFF BRANDON HANKS, as well as other protected classifications.

157.    DEFENDANTS' inaction and failure to protect PLAINTIFF BRANDON HANKS breached a duty owed to him that "unreasonably endangered his safety," as well as DEFENDANTS' negligence threatened him with physical harm. PLAINTIFF BRANDON HANKS is fearful to report to work on account of his being labeled a "gang member," "gang affiliated," and a "narcotics trafficker" whose accused of engaging in "criminal activity."

158.    By reason of DEFENDANTS' discriminatory employment practices including, wrongful denial of promotion, PLAINTIFF BRANDON HANKS has experienced harm, including loss of compensation, back and front pay, and other employment benefits, and continues to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

159.    DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure the PLAINTIFF BRANDON HANKS by displaying a conscious disregard to his rights under state

and Federal law, as well as his personal health and safety. DEFENDANTS illegal conduct entitles PLAINTIFF to punitive damages.

160.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF prays for a judgment as hereinafter set forth.

## COUNT XIII
## NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION
## (AS AGAINST DEFENDANTS CITY OF SYRACUSE AND CHIEF KENTON BUCKNER)

161.    PLAINTIFF BRANDON HANKS realleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

162.    PLAINTIFF BRANDON HANKS alleges claims for Negligent Hiring, Training, Retention, and Supervision. To prevail in any such claims, a plaintiff must prove, in addition to the elements of standard negligence, that "(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

163.    DEFENDANTS, and each of them, owed PLAINTIFF BRANDON HANKS a duty of care to be free from discrimination, harassment and hostile work environment.

164.    DEFENDANTS owed a duty specifically to PLAINTIFF BRANDON HANKS, an African American, as well as other employees that fall within protected classifications.

165.   DEFENDANTS discriminated against PLAINTIFF BRANDON HANKS, an African American, because of his race.

166.   DEFENDANT OFFICERS, as well as ratification by DEFENDANTS' CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN GAY, subjected PLAINTIFF BRANDON HANKS to racist language on account that said European American employees felt comfortable and unthreatened in their presumption that other European American employees and supervisors would acquiesce, look aside and/or participate in perpetuating in the hostile work environment.

167.   DEFENDANTS have consistently hired less qualified European Americans as members of the Gang Violence Taskforce and have discriminated against other African Americans, such as PLAINTIFF BRANDON HANKS, thereby violating Title VII and New York State law prohibiting discrimination in the workplace based on protected classifications, inter alia, as race.

168.   DEFENDANTS breached the statutory duty imposed by Title VII and the anti-discrimination laws of the State of New York by failing to protect PLAINTIFF BRANDON HANKS from discrimination, harassment, hostile work environment and retaliation.

169.   DEFENDANTS, and each of them, failed to hire employees who respected the laws and Constitution of the United States, as well as the State of New York which expressly prohibits racial discrimination and all forms of discrimination on the basis of protected classifications. DEFENDANTS had actual and constructive knowledge of the discrimination occurring in its work force. DEFENDANTS knew or should have known of their European American employees' propensity for the racist conduct because such conduct was reported to DEFENDANT supervisors. The illegal discrimination, hostile work environment, harassment and retaliation occurred on DEFENDANTS' premises.

170.     DEFENDANTS, and each of them, engaged in conduct that was despicable, malicious, fraudulent, oppressive, vile, and intentionally calculated to harm and injure by displaying a conscious disregard to his rights under state and Federal law, as well as his personal health and safety. DEFENDANTS illegal conduct entitles PLAINTIFF to punitive damages only against individual defendants.

171.     The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF prays for a judgment as hereinafter set forth.

## COUNT XIV
## SLANDER
## (AS AGAINST ALL DEFENDANTS)

*"A good name is rather to be chosen than great riches,
and loving favour rather than silver and gold."* **Proverbs 22:1**

172.     PLAINTIFF BRANDON HANKS realleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

173.     DEFENDANTS have repeatedly and viciously slandered the name and reputation of PLAINTIFF BRANDON HANKS. These statements have been intentionally meant to harm him and his ability to partake in his chosen and cherished career as a police officer. DEFENDANTS have repeatedly accused PLAINTIFF BRANDON HANKS of being "gang affiliated," a "gang member," a "narcotics trafficker," involved in "criminal activity," and listening to "rap music," among others. Due to DEFENDANTS continual slander, PLAINTIFF BRANDON HANKS has been deprived of the ability to advance in rank and attain supervisorial responsibilities within the SPD.

174.    By contacting PLAINTIFF BRANDON HANKS' head basketball coach and referring to him as "boy" and accusing him of playing the "race card," DEFENDANT BRANDON FOURGNIER harmed the reputation and career of BRANDON HANKS.

175.    Similarly, by relying on her unique and confidential relationship with PLAINTIFF BRANDON HANKS, DEFENDANT ANN CLARK expressly affirmed DEFENDANTS' slanderous designations and accusations levied against BRANDON HANKS that were disseminated on social media, further harming his reputation and career.

176.    These statements and actions made by the DEFENDANTS are directly related to injuries against PLAINTIFF BRANDON HANKS' ability to perform his duties as a police officer and a basketball coach.

177.    As these statements made by the DEFENDANTS were repeated, they served to continually damage PLAINTIFF BRANDON HANKS' reputation beyond repair and resulted in a drastic loss of his career.

178.    DEFENDANTS have cause irreparable harm to PLAINTIFF BRANDON HANKS with their libelous and slanderous accusations that Officer Brandon Hanks is associated with criminal conduct such as, narcotics trafficking, gang affiliation and criminal activities, because such slanderous injury to his reputation is spread and broadcast to the infinity of the world-wide web by repetition of these false accusations.

179.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF prays for a judgment hereinafter as set forth herein.

## COUNT XV
### LIBEL
### (AS AGAINST ALL DEFENDANTS)

180.     PLAINTIFF BRANDON HANKS re-alleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

181.     DEFENDANTS have published a memorandum that viciously slandered the name and reputation of PLAINTIFF BRANDON HANKS. These published statements have been intentionally created to harm BRANDON HANKS and his ability to take part and enjoy his career as a police officer. DEFENDANTS have repeatedly accused PLAINTIFF BRANDON HANKS of being "gang affiliated," a "gang member," a "narcotics trafficker," and partaking in "criminal activity." Due to DEFENDANTS publication and persistent slander, PLAINTIFF BRANDON HANKS has been deprived of his ability to advance through the ranks of SPD.

182.     By contacting PLAINTIFF BRANDON HANKS' head basketball coach and referring to him as "boy" and accusing him of playing the "race card," DEFENDANT BRANDON FOURGNIER harmed the reputation and career of BRANDON HANKS.

183.     By relying on her unique and confidential relationship with PLAINTIFF BRANDON HANKS, DEFENDANT ANN CLARK expressly and publicly affirmed the slanderous designations and accusations levied against BRANDON HANKS as disseminated on social media.

184.     This publication made by the DEFENDANTS directly called into question PLAINTIFF BRANDON HANKS' ability to perform his duties as a police officer.

185.     This publication made by DEFENDANTS has repeatedly damaged PLAINTIFF BRANDON HANKS' reputation that is beyond repair and has effectively resulted in the loss of his career.

186.    The actions and inactions of DEFENDANTS, and each of them, were the direct and proximate cause of all of the economic and non-economic damages sustained by PLAINTIFF BRANDON HANKS as alleged herein.

WHEREFORE, PLAINTIFF BRANDON HANKS prays for a judgment as hereinafter set forth.

### COUNT XVI
### DEFAMATION PER SE
### (AS AGAINST ALL DEFENDANTS)

187.    PLAINTIFF BRANDON HANKS re-alleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

188.    DEFENDANTS have repeatedly and viciously defamed the name and reputation of PLAINTIFF BRANDON HANKS by publishing a memorandum accusing him of being "gang affiliated," a "gang member," a "narcotics trafficker," and partaking in "criminal activity." All of these published accusations were part of an intentional and ongoing campaign of defamation meant to damage PLAINTIFF BRANDON HANKS' reputation and cause harm to his ability to achieve a promotion to the Gang Violence Taskforce, as well as overall to maintain his livelihood. By accusing PLAINTIFF BRANDON HANKS of being affiliated with criminals and crimes of narcotics trafficking and being affiliated with illegal gangs as defined in the NYS Penal Law, DEFENDANTS have engaged in Defamation per se.

189.    DEFENDANTS conduct was without any privilege, justification or any legitimate business reason.

190.    These statements have been intended to, and did, cause injury to PLAINTIFF BRANDON HANKS' career and to detrimentally harm his standing and reputation in the SPD.

These published statements have equally affected BRANDON HANKS' ability to maintain cooperative relationships with fellow officers and the public at large.

WHEREFORE, PLAINTIFF prays for a judgment as hereinafter set forth.

### COUNT XVII
### RESPONDEAT SUPERIOR
### (AS AGAINST ALL DEFENDANTS)

191.     PLAINTIFF BRANDON HANKS re-alleges and incorporates by reference each of the foregoing paragraphs above with the same force and effect as if fully set out in specific detail hereinafter.

192.     PLAINTIFF BRANDON HANKS claims that the CITY OF SYRACUSE is liable under the theory of respondeat superior for DEFENDANTS' violations of PLAINTIFF BRANDON HANKS' rights under State and Federal law, as well as rights under the U.S. Constitution where DEFENDANTS harms occurred while on duty, in and during the course and scope of their duties and functions as SPD officers and supervisors, and while they were acting as agents and employees of DEFNDANT CITY OF SYRACUSE. Cities may be held vicariously liable for state law torts committed by police officers under a theory of respondeat superior. See *Williams v. Village of White Plains,* 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010). Therefore, the respondeat superior claim against the CITY OF SYRACUSE regarding Defendant Police Officers is a valid claim, establishing liability against the CITY OF SYRACUSE.

WHEREFORE, PLAINTIFF BRANDON HANKS' prays that the Court will: Issue a judgment declaring that the SPD's policy, practice and/or custom of engaging in illegal employment practices challenged herein is unconstitutional in that it violates the Fourteenth Amendment, Title VII, and the Constitution and laws of the State of New York, and that its implementation and sanctioning by DEFENDANTS' CITY OF SYRACUSE, SPD, CHIEF KENTON BUCKNER DEPUTY CHIEF JOSEPH CECILE, DEPUTY

CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY is a direct and proximate result of the following policies, practices and/or customs of:

    i. creation and maintenance of a discriminatory hostile work environment;

    ii. failing to adequately monitor the SPD and its officers and discipline those SPD officers who violate the constitutional rights of their fellow employees serving in the Department;

    iii. encouraging, sanctioning, and failing to rectify the SPD's unconstitutional discriminatory employment policies, including retaliation for whistleblowing, failure to promote, failure to hire African-American police officers, failure to discipline Officers who engage discriminatory and racist conduct, and failure to cease disparate treatment of African-American employees;

(b) Issue a judgment declaring that DEFENDANTS CITY OF SYRACUSE has violated both its 1980 Consent Decree with the United States Department of Justice and its own Executive Order, dated June 19, 2020 by taking affirmative steps to discriminate against African American SPD employees that, on account of the hostile work environment that ensues therein, results in a decrease of a racially diverse police department and a significantly low number of African American personnel in SPD supervisory positions, as well as proportionally represented in the Department's coveted taskforces and other elite departments with SPD.

(c) Issue an order for the following Injunctive relief

COMPLAINT FOR BRANDON HANKS

i.   Enjoining the SPD from continuing its policy, practice, and/or custom of discriminating against its African American personnel;

ii.  Enjoining the SPD leadership and supervisory personnel from continuing to refuse to train, reprimand and discipline its police officers who engage in discriminatory, racist and retaliatory conduct directed at SPD's African American personnel;

iii. Requiring the CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY to institute and implement improved policies and programs with respect to training, discipline and promotion designed to eliminate SPD's policy, practice and/or custom of discriminatory and racist conduct, as well as hostile work environment directed at SPD employees of color;

iv.  Requiring the CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY to deploy SPD officers with appropriate and adequate supervision to ensure that SPD officers cease resorting to discriminatory and racist conduct directed at African-American SPD staff;

v.   Requiring the CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF JOSEPH CECILE, DEPUTY CHIEF RICHARD TRUDELL and CAPTAIN TIMOTHY GAY to institute and implement appropriate measures to ensure compliance

with the directives in both the USDOJ's Consent Decree of 1980 as well as the City's Executive Order, dated June 19, 2020.

vi. Requiring DEFENDANTS to initiate and implement programs that provide (i) equal employment opportunities for African American employees; (ii) remedy the effect of Defendant's past and present unlawful employment practices; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

vii. Requiring DEFENDANTS to initiate and implement systems of assigning, training, transferring, compensating, and promoting African American employees in a non-discriminatory manner;

viii. Establishing a task force on equality and fairness to determine the effectiveness of the programs described in (vi) and (vii), above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (vi) and (vii), above;

(d) Award PLAINTIFF BRANDON HANKS compensatory damages in the amount of 33 million for full and compensation for the irreparable damage and injury to Officer Brandon Hanks' reputation and career and self-image, plus compensation for pain, anxiety, inconvenience, mental distress, emotional distress, loss of

enjoyment of life, humiliation, spiritual injury, discomfort, misery and suffering, past and future;

(e) Award PLAINTIFF BRANDON HANKS damages against all DEFENDANTS and the individual OFFICER DEFENDANTS, to the extent that their liability is based upon reprehensible actions and/or inaction undertaken in their individual capacities, in an amount which is fair, just and reasonably designed to punish and deter said reprehensible conduct in the amount to be determined at trial;

(f) Award PLAINTIFF BRANDON HANKS reasonable attorneys' fees pursuant to 42 U.S.C. Sections §§1981, 1983, and 1988.

(g) Award PLAINTIFF BRANDON HANKS costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988;

(h) Pre-judgment and Post-judgment interest; and

(i)  Award such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Date: August 16, 2021

RESPECTFULLY SUBMITTED,
RYDER LAW FIRM
By: */s/Jesse P. Ryder*
Jesse P. Ryder, Esq.
Attorney for PLAINTIFF
RYDER LAW FIRM
6739 Myers Road East
Syracuse, NY 13057
Tel: (315) 382-3617
Fax: (315) 295-2502
ryderlawfirm@gmail.com

Dated: August 16, 2021

LAW OFFICES OF BONNER & BONNER
By: */s/Charles A. Bonner*
Charles A. Bonner

California State Bar No.: 85413
Attorney for PLAINTIFF
(*Pro Hac Vice Pending*)
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE RD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
charles@bonnerlaw.com

Dated: August 16, 2021

LAW OFFICES OF BONNER & BONNER
By: */s/A. Cabral Bonner*
A. Cabral Bonner
California State Bar No.: 247528
Attorney for PLAINTIFF
(*Pro Hac Vice Pending*)
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE RD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738