# RYDER LAW FIRM

**6739 MYERS ROAD**
**EAST SYRACUSE, NEW YORK 13057**
ryderlawfirm@gmail.com
**Phone: 315-382-3617**
**Fax: 315-295-2502**

May 9, 2022

<u>Via ECF</u>

Hon. Andrew T. Baxter
Chief U.S. Magistrate Judge
James M. Hanley Federal Building
100 S Clinton St.
Syracuse, New York 13261

Re: Hanks v. City of Syracuse, et al.,
Civil Action No.: 5:21-CV-00921 (GLS/ATB)

Dear Judge Andrew T. Baxter:

     My office represents Plaintiff Brandon Hanks. Mr. Hanks submits this letter in reply and opposition to Defendants' request to seal the stenographic record of the telephone conference that the Court and respective parties held on April 30, 2022. See Dkt. No. 64. As the following analysis makes plain, Defendants' request must be denied, or in the alternative, said transcripts must be marginally sealed in a limited and narrowly tailored manner.

     Given the presumption that the public has a right to be informed that its officials who are publicly charged with protecting their rights and enforcing the law are themselves engaged in a systematic discriminatory campaign of denying overly qualified African American police officers opportunities to advance in rank and into supervisory positions, any attempt to bury and silence the extent to which the public officials will go to ensure that their long standing custom and practice will remain undisturbed must be adamantly rejected. *See, Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011)("exposure of official misconduct, especially within the police department, is generally of great consequence to the public); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 606(1976)(evidence implicating a government official in criminal activity goes to the very core of matters of public concern); *Moskowitz v. Coscette*, 3 Fed. Appx. 1, 4-5 (2d Cir. 2001)(an officer's speech about actions by other officers that involved the safety of the public or corruption within the police department constituted protected speech).

Thus, given the magnitude of this alleged "matter of public concern," the Second Circuit's well established presumption that the public has a contiguous right to "immediate public access to judicial documents,' particularly when they elicit 'a court's adjudication of a litigants substantive rights,' is a presumption that must also be vehemently protected.[1] *Lugosch v. Pyramid Co*., 435 F.3d 110, 2006 U.S. App. LEXIS 525, 2006 WL 45865, at *14 (2d Cir. 2006)(presumption attaches under both the common law and the First Amendment).

As this court must determine the weight of the 'judicial document presumption' based upon "the role of the material at issue…and the resultant value of such information to those monitoring the federal courts," *Lugosch*, 435 F.3d at 119, here the 'judicial power' at play is this Court's inherent power to protect the parties and actions before it, *Haitian Ctrs. Council v. Sale,* 817 F. Supp. 336, 337(EDNY 1993) and the "resultant value of such information" to the citizens of Syracuse and their continued ability to monitor this Court's adjudication of issues that fundamentally impact their day to day lives in having to live under the deeply entrenched discriminatory Syracuse Police Department.

While this Court chose to provide a stern warning to Defendants over accessing and/or utilizing Plaintiff's surreptitiously recorded statements as "information obtained through unauthorized interceptions," the Court's warning, in and of itself, warrants public access as a means of "sunshining"[2] the issue in order to further ensure that Defendants refrain from engaging in unscrupulous conduct with respect to the audio recordings. Without a protective order in place, both this Court and Plaintiffs are wholly dependent upon Defendants' self-policing conduct which, given Plaintiffs allegations, might not be sufficient for ensuring Defendants' compliance.[3] While Plaintiff acknowledges that his Letter Motion, dated April 20, 2022(Dkt. 59) was filed precipitously in order to briskly stem a potentially fatal impending breach of privilege, and in so doing, failed to meticulously comply with this Court's local rules, Plaintiff is however assessing the filing of a subsequent Motion for Protective Order that more carefully sets out his factual basis for warranting this Court's active role in taking control over the protected recordings.

---

[1] The notion that the public should have access to court proceedings, records and documents is integral to our system of government." *United States v. Erie County,* 763 F.3d 235, 238-39 (2d Cir. 2014). It is thus deeply rooted in both common law and the First Amendment and has been recognized by both the United States Supreme Court and the Court of Appeals for the Second Circuit. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573(1980) (presumption of openness); *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 597-98(1978) (presumption of open access to applies to records admitted into evidence in a criminal trial); *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013)(First Amendment right of access to criminal trials "applies 'to civil trials and to their related proceedings and records."

[2] By analogy and rooted in the same constitutional foundation supporting record sealing, 'sunshine laws' are a means of maintaining public's faith in government by limiting secrecy and closed records. *Sprague v. University of Vermont*, 661 F. Supp. 1132, 1139(D.Vt. 1987).

[3] While Plaintiff has been apprised that in an attempt to distance themselves from the taint and temptation of partaking in the contents of the audio recording, Defendants have transferred said recordings and the criminal investigation based thereupon to the Onondaga District Attorney's office, such transfer however is still without sufficient assurance wherein the investigation is being overseen by ex-SPD Sgt. Sean Lynch who, account of being a long time SPD supervisory Sergeant, is without the impartiality that is absolutely required under these circumstances.

Nevertheless, here at bar, when balancing a "competing consideration"[4] of, for example, a potential impairment of "law enforcement's ability to conduct an investigation," against the weight of the presumption of public access, *Lugosch*, 435 F.3d at 120, this Court must reasonably rely upon means less restrictive than a broad-brush blanket sealing of the transcript in its entirety. *Id.*(given the presumption of the common law right of public access, a courts' extent of sealing the record must be narrowly tailored). As such, references to any individual identities that might conceivably serve to compromise the District Attorney's Office's ongoing criminal investigation can readily and easily be redacted. The same holds true of individual identities articulated during the April 29, 2022 telephone conference whose privacy interests might have reasonably been elicited. *United States v. Amodeo,* 71 F.3d 1044, 1050-51 (2d Cir. 1995). Redaction as a 'narrowly tailored' means more than sufficiently addresses Defendants' concerns as raised in their respective instant motions.

With respect to Defendants' hyperbole in categorizing Plaintiff counsels' zealous protection of their client's rights as simply relying upon "immaterial, impertinent, and unnecessarily scandalous allegations," as well as "conjecture, speculation and rumor," it is more than understandable that Defendants would in turn resort to such 'school yard, smoke and mirror' accusations given their unenviable role of having to defend an institution that has a long standing track record of engaging in discriminatory and racially infirm conduct, as well as an entrenched and dogged commitment to hold fast to such custom and practice despite now living in a post George Floyd era. Nevertheless, it is well-settled that "generalized concerns of adverse publicity" and reputational injury cannot justify a sealing order. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018). As the Court of Appeals explained in *Lugosch*, "the natural desire of parties to shield prejudicial information contained in judicial records . . . cannot be accommodated by courts without seriously undermining the tradition of an open judicial system." 435 F.3d at 123 n.5. Thus, "the courts generally reject negative publicity as a basis for overcoming the strong presumption of public access to the allegedly prejudicial items." *Julian v. Metro. Life Ins. Co.*, 2020 U.S. Dist. LEXIS 185227, 2020 WL 5913739, at *4 (S.D.N.Y. Oct. 6, 2020).

While Plaintiff reasonably respects and acknowledges the necessary function that the sealing of records provides, here, the balance tips in favor of upholding the presumption of public access with the limitation of specific and pointed redaction of identities that could conceivably compromise both a criminal investigation and/or privacy interests. Other than the above suggested limitations, it is however imperative that the public has access to this Court's concern and warning regarding the truly unnerving and potentially rights eviscerating turn of events wherein the discovery of surreptitious audio recordings captured at Plaintiff's off-duty employment are currently in Defendants custody and control(and where reasonable inferences exist suggesting that the recordings capture were potentially directed at their behest).

---

[4] The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. First, "before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Id.* at 119. According to the Second Circuit, the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Id.* at 120

      For the foregoing reasons, this Court must deny a blanket and wholesale sealing of the transcripts of the April 29, 2022 telephone conference (Dkt. 64) but rather resort to the more balanced and narrowly tailored means of redacting the identities asserted therein that may be involved in an ongoing criminal investigation and/or whose identities elicit privacy concerns.

                                              Respectfully submitted,

                                              By:  //Jesse P. Ryder//

Jesse P. Ryder, Esq.
6739 Myers Road
East Syracuse, New York 13057
(315) 382-3617
(315) 295-2502 (Fax)
ryderlawfirm@gmail.com

Law Offices of Bonner & Conner
Charles A. Bonner, Esq.
475 Gate Five Road, Suite 211
Sausalito, California 94965
(415) 331-3070
(415) 331-2738 (Fax)
cbonner799@aol.com

Brian J. Butler
Bond Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
(315)-218-8160
(315)-218-8100 (Fax)
butlerb@bsk.com

John G. Powers
Hancock Estabrook, LLP
1800 AA Tower I
100 Madison Street
Syracuse, NY 13202
(315) 565-4550
(315) 565-4650 (Fax)
jpowers@hancocklaw.com