UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRANDON HANKS and Other Similarly Situated Individuals,

    Plaintiff,

v.

CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF RICHARD TRUDELL, DEPUTY CHIEF JOSEPH CECILE, CAPTAIN TIMOTHY GAY, OFFICER COLIN HILLMAN, OFFICER DEREK MCGORK, OFFICER WILLIAM KITTELL, OFFICER ANTHONY FIORINI, OFFICER DAVID METZ, OFFICER SHAWN HAUCK, OFFICER SUSAN IZZO, OFFICER ANN CLARK, OFFICER BRANDON FOUGHNIER, and DOES 1-100,

    Defendants.

**DECLARATION**

Civil Action No. 5:21-cv-00921-GLS-ATB

BRIAN J. BUTLER declares, pursuant to 28 US.C. § 1746, that the following is true and correct:

1. I am a member of the law firm of Bond, Schoeneck & King, PLLC, counsel for Defendant the City of Syracuse (the "City"), and Defendants former Chief Kenton Buckner ("Chief Buckner"), Deputy Chief Richard Trudell ("Deputy Chief Trudell"), Officer Derek McGork ("Deputy Chief McGork"), and Chief Cecile ("Deputy Chief Cecile") (collectively, the "Chief Defendants")[1] in the above-captioned litigation (the "Action").

2. I submit this declaration in support the City and the Chief Defendants' motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

3. On April 20, 2022, Plaintiff filed a procedurally defective "motion" for a protective order seeking to compel the City, Chief Defendants, and Defendants Officer William Kittell,

---

[1] On April 22, 2022, now-former Chief Buckner retired from the Syracuse City Police Department, and the same day, Mayor Ben Walsh promoted now-current Chief Cecile. Derek McGork is identified in the caption of the Complaint as an Officer, but is a Deputy Chief.

1

Officer Anthony Fiorini, Lieutenant David Metz, Sergeant Shawn Hauck, Lieutenant Susan Izzo, Officer Anne Clark and Sergeant Brandon Fougnier (the "Officer Defendants") (collectively, "Defendants") to produce alleged "unconsented illegally captured surveillance audio recordings surreptitiously captured while [Plaintiff] was undertaking off duty employment with the Syracuse Housing Authority" ("SHA"), to prohibit Defendants' attorneys from reviewing the recordings, and to allow the Court an opportunity to conduct an in-camera review of the recordings ("Hanks Letter I"). (ECF Doc. No. 59 at p. 1).

4. The City and Chief Defendants promptly responded to Hanks Letter I the following day (the "City/Chief Response"), explaining the allegations in Hanks Letter I were "completely unsubstantiated," and, in fact, that they had reason to believe Plaintiff was not working at SHA at the time Hanks Letter I claims the recordings were made. (ECF Doc. No. 60 at 1).

5. The Officer Defendants similarly promptly responded to Hanks Letter I (the "Officer Response"), noting that Plaintiff failed to provide any evidence from someone with personal knowledge of the underlying facts in support of his purported "motion," and that Plaintiff's counsel cited no authority to demonstrate Plaintiff's entitlement to the relief requested, *i.e.*, an order compelling Defendants to produce recordings despite any evidence the Officer Defendants had possession of them or even knew about the recordings. (ECF Doc. No. 62 at 1-2). The Officer Defendants specifically notified Plaintiff of their belief that the Hanks Letter I was sanctionable under FED. R. CIV. P. 11(b)(3) because it was not supported by fact. Id. at p. 1.

6. In support of his purported "motion", Plaintiff filed an additional letter, on April 21, 2022 (ECF Doc. No. 61) ( "Hanks Letter II"). Despite the City/Chief Response and the Officer Response, Plaintiff did not withdraw Hanks Letter I. Worse, Plaintiff did not pause to verify the factual basis for Hanks Letter I. He did not temper or retract his assertion that Defendants' counsel

2

"illicitly procured" the recordings, and even after having been reminded by the City/Chief Defendants that Plaintiff was not working in off-duty employment on the day of the recordings, Plaintiff did not back away from that obvious misstatement, or provide proof otherwise. Rather, Plaintiff "doubled down" in another submission, asserting:

> Given the allegations that Defense counsel is poised to receive, let alone is already in possession of, unconsented, illegally captured statements that were surreptitiously recorded at Plaintiff's off-duty employment that conceivably contain complete and unredacted conversations of protected attorney client content, the imminency of the issuance of a protective order and the otherwise 'futility' of conferring with Defense counsel justifies Plaintiff's foregoing the Local Rules' otherwise imperative prerequisite of 'meeting and conferring' prior to petitioning the Court. (ECF No. 61 at 1)

7. Hanks Letter II even went further than Hanks Letter I, with additional baseless and inflammatory allegations. He asserted that the recording was "one of many surreptitiously recordings [sic] made of Plaintiff that temporally parallels his litigation against Defendants." *Id*. Further, Plaintiff alleged not only a risk that defense counsel might be in possession of the recording (which alone had no evidentiary support), but also that defense counsel had already begun reviewing recordings, stating: "any attempt to meet and confer would have undoubtedly . . . provid[ed Defense] counsel with further opportunity to continue in their examination of the recordings." *Id*. at 1-2. Incredibly, despite the severity of these allegations, which include suggestions of criminal conduct, Plaintiff again failed to provide a single declaration from someone with personal knowledge of the facts underlying the representations his counsel made to the Court.

8. On April 29, 2022, U.S. Magistrate Judge Andrew T. Baxter held a telephonic conference to address the purported "motion" (the "Conference") (ECF Doc. No. 64). During the Conference, the Court denied Plaintiff's purported "motion," (*i.e.*, the requests in Hanks Letters I

3

14721114

and II), "finding that the relief requested was not appropriately granted and was probably well beyond" the Court's "authority, based on the limited record during the very early stages of this litigation." (ECF Doc. Nos. 65, 69)

9. Because of statements made by Plaintiff's counsel during the Conference, the Court stated that it would entertain a request to seal the proceeding. Defendants made respective motions to seal on May 4, 2020 (the "Motion to Seal") (ECF Doc. Nos. 66, 67). Plaintiff responded to the Motion to Seal on April 9, 2022 (ECF Doc. No. 68) ("Hanks Letter III").

10. Despite having been warned by the Officer Defendants that their conduct in Hanks Letters I and II could be considered sanctionable because they lacked a reasonable basis for their assertions, in Hanks Letter III, Plaintiff's counsel again lodged incendiary and unsupported allegations against Defendants (and their counsel). (ECF Doc. No. 68)

11. Hanks Letter III first attempts to excuse Plaintiff's failure to substantiate the allegations in his purported "motion," or to follow the Court's local rules, by asserting Hanks Letter I "was filed precipitously in order to briskly stem a potentially fatal impending breach of privilege," *id*. at 1, again suggesting Defendants and/or their counsel would violate the attorney-client privilege. In addition, Hanks Letter III asserts Plaintiff will "more carefully set[] out his factual basis warranting this Court's active role in taking control over the protected recordings," but never provides these facts, *id*. at 1, choosing instead to imply, without proof, that the purported "motion" was based on fact.

12. Finally, Hanks Letter III boldly and baselessly alleges Defendants and/or their counsel unlawfully recorded Plaintiff and violated his right to attorney-client privilege, stating, without any proof or substantiation:

> Other than the above suggested limitations, it is however imperative that the public has access to this Court's concern and warning

4

>    regarding the truly unnerving and potentially rights eviscerating turn of events wherein the discovery of surreptitious audio recordings captured at Plaintiff's off-duty employment are currently in Defendants custody and control(and [sic] where reasonable inferences exist suggesting that the recordings capture [sic] were potentially directed at their behest).
>
>    *Id*. at 3.

13. On July 25, 2022, I mailed to Plaintiff's counsel, via electronic and first class mail, Defendants' Memorandum of Law in Support of Rule 11 Sanctions (the "July 25 Correspondence"). A true and accurate copy of the July 25 Correspondence is attached hereto as **Exhibit A**.

14. As set forth further in the Memorandum of Law, Plaintiff's statements and contentions in Hanks Letter I, Hanks Letter II, and Hanks Letter III were made in violation of Rule 11 because such statements and contentions were made for an improper purpose, were not warranted by existing law, and the factual contentions lacked evidentiary support.

15. The July 25 Correspondence expressly demanded that counsel file declarations correcting the misrepresentations made in Plaintiff's submissions in support of the purported "motion."

16. On August 15, 2022, Plaintiff's counsel forwarded a letter by email to counsel for Defendants questioning how the demand that Plaintiff's counsel file a declaration correcting the misrepresentations made in Plaintiff's submissions in support of the "motion" for a protective order would not violate the Court's sealing order (the "August 15 Correspondence"). A true and accurate copy of the August 15 Correspondence is attached hereto as **Exhibit B**.

17. Despite the fact that Plaintiff's counsel mentioned nothing of a declaration by Plaintiff supporting the purported facts set forth in the "motion" in Hanks Letters I, II, or III, in the August 15 Correspondence, Plaintiff's counsel asserted that his oversight resulted in a failure

to attach Plaintiff's declaration attesting to the truth of his allegations in support of the motion for a protective order and that counsel has Plaintiff's declaration "on hand." *See Ex. B* at 2.

18. On August 19, 2022, I responded to the August 15 Correspondence, and explained that the requested corrective action would not violate the Court's sealing order because the record of the Conference is the only document that was sealed by the Court's May 11, 2022 sealing order. (ECF Doc. No. 69).

19. I also requested that Plaintiff's counsel provide to us Plaintiff's declaration that it had "on hand," and confirm that Plaintiff would take the corrective action requested in the July 25 Correspondence by Friday, August 19, 2022.

20. On August 19, 2022, Plaintiff's counsel emailed to Defendants' counsel a letter (the "August 19 Correspondence") with an affidavit by Plaintiff executed August 19, 2022, purportedly in response to the Rule 11 motion (the "Hanks Affidavit"). True and accurate copies of the August 19 Correspondence and the Hanks Affidavit are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

21. Plaintiff's counsel did not forward Plaintiff's declaration that he claimed to have "on hand" and was not submitted in support of the "motion" based on counsel's oversight.

22. Plaintiff's counsel indicates they will withdraw any statements stating, directly or by inference, that Bond, Schoeneck & King, PLLC was responsible for the recording or had the recordings in its possession. They also indicate, based on additional, unspecified information obtained by Plaintiff, that they will withdraw one statement from Hanks Letter 1 (*see Ex. C* at 1). By omission, however, Plaintiff's counsel is refusing to withdraw the numerous allegations that the named Defendants were responsible for procuring the alleged surreptitious recordings.

6

23. Despite the fact that the Hanks Affidavit states he was told by fellow Police Officer Nicki Hendrix that Rakeim Days, who works for the Syracuse Housing Authority, *not the Syracuse Police Department*, was the person suspected of initiating the recordings, (*see Ex. D* at ¶¶ 8, 12), Plaintiff's counsel refuses to withdraw the false and incendiary allegations against the named Defendants.

24. The 21-day period set forth in Rule 11(c)(2) has been satisfied based upon the service of the Rule 11 motion on counsel for Plaintiffs on July 25, 2022.

25. For the reasons set forth in the accompanying memorandum of law, Defendants respectfully request that the Court grant their Rule 11 motion and impose sanctions on Plaintiff's counsel by striking the offending filings (ECF Nos. 59, 61, 68) from the docket; ordering Plaintiff's counsel to pay the City and Chief Defendants' legal fees associated with responding to Plaintiff's Motion for a Protective Order, including the Motion to Seal; and admonishing Plaintiff's counsel for their conduct.

I declare under penalty of perjury that the foregoing is true and correct.

*s/ Brian J. Butler*
Brian J. Butler (510105)
Executed August 24, 2022
