# EXHIBIT A

**Magley, Liza**

| | |
|---|---|
| **From:** | Duger, Charis |
| **Sent:** | Monday, July 25, 2022 4:39 PM |
| **To:** | cbonner799@aol.com; cabral@bonnerlaw.com; ryderlawfirm@gmail.com |
| **Cc:** | jpowers@hancocklaw.com; mdagostino@hancocklaw.com; Leonard, Colin; Magley, Liza; Jacobson, Nicholas; Butler, Brian |
| **Subject:** | Hanks v. City of Syracuse, et al., 5:21-cv-0921-GLS-ATB |
| **Attachments:** | Ryder and Bonner Rule 11 Letter(14610655.1).pdf; Syr_Hanks - Rule 11 - MOL(14064808.9).pdf |

Dear Counselors,

Please see the attachments concerning the above matter.

Thank you,

**Charis Duger**, Administrative Assistant
Litigation
315.218.8284 **Direct**
CDuger@bsk.com



One Lincoln Center, Syracuse, NY 13202-1355
315.218.8000 **Firm** bsk.com

For informed business counsel on COVID-19 issues, visit Bond's COVID-19 Essential Resources for Business page. To subscribe to our e-mails regarding COVID-19 or other topics, click here.

*This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message.*



One Lincoln Center | Syracuse, NY 13202-1355 | **bsk.com**

**BRIAN J. BUTLER, ESQ.**
butlerb@bsk.com
P: 3152188160
F: 315218810

July 25, 2022

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Jesse P. Ryder
Ryder Law Firm
6739 Myers Road East
Syracuse, New York 13057
ryderlawfirm@gmail.com

Charles A. Bonner and A. Cabral Bonner
Law Offices of Bonner & Bonner
475 Gate Five Road, Suite 211
Sausalito, California 94965
charles@bonnerlaw.com

Re:    *Hanks v. City of Syracuse, et al., 5:21-cv-0921-GLS-ATB*

Dear Jesse, Charles and Cabral:

Enclosed is the Memorandum of Law of Defendants the City of Syracuse (the "City"), former Chief Kenton Buckner,  Chief Joseph Cecile,  Deputy Chief Richard Trudell, and Deputy Chief Derek McGork (collectively, the "Chief Defendants") in Support of Rule 11 Sanctions which is being served on you in accordance with Rule 11(c)(2) of the Federal Rules of Civil Procedure relating to the "motion" for a protective order that was filed by you on behalf of Plaintiff on April 20, 2022.

Plaintiff's purported "motion" already has been heard and denied by the Court, and thus, withdrawal of the motion is not sufficient. Defendants demand that Plaintiff's counsel file declarations correcting the misrepresentations made in Plaintiff's submissions in support of the "motion". If Plaintiff fails to take these actions, then Defendants intend to move for sanctions for the reasons set forth in the accompanying memorandum of law.

If the requested corrective action is not completed by August 16, 2022, The City and Chief Defendants will proceed with the filing of their motion.

Thank you for your attention to this matter.

Attorneys At Law | A Professional Limited Liability Company

July 25, 2022
Page 2

Sincerely,

BOND, SCHOENECK & KING, PLLC

Brian J. Butler

cc:     <u>Via Electronic Mail</u>

Colin L. Leonard, Liza R. Magley, Nicholas P. Jacobson, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, cleonard@bsk.com, lmagley@bsk.com, njacobson@bsk.com

John G. Powers, Hancock Estabrook LLP, 1800 AXA Tower I, 100 Madison Street, Syracuse, New York 13202, jpowers@hancocklaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRANDON HANKS and OTHERS SIMILARLY SITUATED,

        Plaintiff,

        v.

CITY OF SYRACUSE, CHIEF KENTON BUCKNER, DEPUTY CHIEF RICHARD TRUDELL, DEPUTY CHIEF JOSEPH CECILE, CAPTAIN TIMOTHY GAY, OFFICER COLIN HILLMAN, OFFICER DEREK MCGORK, OFFICER WILLIAM KITTELL, OFFICER ANTHONY FIORINI, OFFICER DAVID METZ, OFFICER SHAWN HAUCK, OFFICER SUSAN IZZO, OFFICER ANNE CLARK, OFFICER BRANDON FOUGHNIER, and DOES 1-100,

        Defendants.

Civil Action No.

5:21-cv-00921-GLS-ATB

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS THE CITY OF SYRACUSE (THE "CITY"), FORMER CHIEF BUCKNER, DEPUTY CHIEF TRUDELL, CHIEF CECILE, AND DEPUTY CHIEF MCGORK FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(C)**

BOND, SCHOENECK & KING, PLLC
    Brian J. Butler (510105)
    Colin M. Leonard (512865)
    Nicholas P. Jacobson (519298)
    Liza R. Magley (519849)
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Email: bbutler@bsk.com
Email: cleonard@bsk.com
Email: njacobson@bsk.com
Email: lmagley@bsk.com

*Attorneys for Defendants City of Syracuse, Chief Kenton Buckner, Deputy Chief Richard Trudell, Deputy Chief Derek McGork, and Chief Joseph Cecile*

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................. 1

Background ................................................................................................................... 1

Factual Background ...................................................................................................... 1

Procedural Background ................................................................................................. 7

Argument ...................................................................................................................... 7

I.   Legal Standard ................................................................................................. 7

II.   Plaintiff's Attorneys Certified Groundless and Frivolous Papers, and Advanced Factual Contentions Either Without a Reasonable Inquiry or With Knowledge of Falsity ................... 9

III.   Plaintiff's Motion Was Brought for an Improper Purpose............................................. 14

Conclusion .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
  579 F. 3d 143 (2d Cir. 2009)......................................................................................9

*In re Australia and New Zealand Banking Group Ltd. Securities Litigation*,
  712 F. Supp. 2d 255 (S.D.N.Y. 2010)........................................................................9

*Baker v. Dorfman*,
  2000 WL 1201467 (S.D.N.Y. Aug. 22, 2000)............................................................8

*Banco de Ponce v. Buxbaum*,
  1995 WL 92324 (S.D.N.Y. Mar. 7, 1995)..................................................................8

*Binghamton Masonic Temple, Inc. v. Bares*,
  168 F.R.D. 121 (N.D.N.Y. 1996)..............................................................................15

*Ehrich v. Binghamton City Sch. Dist.*,
  210 F.R.D. 17 (N.D.N.Y. 2002)..................................................................................8

*Flannigan v. Vulcan Power Group, LLC*,
  No. 09-cv-8473, 2019 WL 3242531 (S.D.N.Y. July 3, 2019)..................................13

*Forbes v. NAMS Int'l, Inc.*
  2007 WL 1814656 (N.D.N.Y. June 21, 2007)............................................................8

*Goldman v. Barrett*,
  No. 15-cv-9223 (S.D.N.Y. Sept. 4, 2018).................................................................13

*In re Gushlak*,
  2012 WL 2564523 (E.D.N.Y. July 2, 2012)..............................................................15

*Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*,
  No. 16-cv-1318, 2017 WL 3671036 (S.D.N.Y. July 18, 2017)..............................8, 9

*Kirsh v. Scott*,
  No. 93-cv-4767, 1994 WL 132383 (S.D.N.Y. Apr. 11, 1994) .....................9, 12, 13

*Lawrence v. Wilder Richman Securities Corp.*,
  417 Fed. Appx. 11 (2d Cir. 2010).............................................................................14

*Murphy v. Cuomo*,
  913 F. Supp. 671 (N.D.N.Y. 1996)...........................................................................14

*Quadrozzi v. City of New York*,
    127 F.R.D. 63 (S.D.N.Y. 1989) ........................................................................14

*Safe-Strap Co., Inc. v. Koala Corp.*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) .................................................................9

*Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory*,
    682 F.3d 170 (2d Cir. 2012) ................................................................................7

*Sussman v. Bank of Israel*,
    56 F.3d 450 (2d Cir. 1995) ................................................................................16

*Televideo Systems, Inc. v Mayer*,
    139 F.R.D. 42 (S.D.N.Y. 1991) ..........................................................................9

*White v. General Motors Corp., Inc.*,
    908 F.2d 675 (10th Cir. 1990) ...........................................................................17

*Zlotnick v. Hubbard*,
    572 F. Supp. 2d 258 (N.D.N.Y. 2008) ................................................................8

**Statutes**

N.Y. Penal Law §§ 250.00, 250.05 ...........................................................................2

**Other Authorities**

Fᴇᴅ R. Cɪᴠ. P. 11(b) ................................................................................................9

Fed. R. Civ. P. 11(b)(1) ...........................................................................................14

Fᴇᴅ. R. Cɪᴠ. P. 11(b)(1)-(3) ......................................................................................8

Fᴇᴅ. R. Cɪᴠ. P. 11(b)(3) .............................................................................................3

Fᴇᴅ. R. Cɪᴠ. P. 11(c) .............................................................................................1, 7

Federal Rules of Civil Procedure Rule 11 ....................................................7, 8, 9, 16

Local Rule 7.1(a)(2) ............................................................................................2, 12

14064808.9 7/25/2022

## PRELIMINARY STATEMENT

Defendant the City of Syracuse (the "City"), together with former Chief Kenton Buckner,[1] Chief Joseph Cecile,[2] Deputy Chief Richard Trudell, and Deputy Chief Derek McGork (collectively, the "Chief Defendants") respectfully submit this memorandum of law in support of their motion for sanctions pursuant to Fed. R. Civ. P. 11(c) (the "Motion") against Plaintiff Brandon Hanks ("Plaintiff") and the attorneys for Plaintiff in this action.

## BACKGROUND

### A. Factual Background

### 1. Hanks Letter I

On April 20, 2022, Plaintiff filed a procedurally defective "motion" for a protective order seeking to compel the City, Chief Defendants, and Defendants Officer William Kittell, Officer Anthony Fiorini, Lieutenant David Metz, Sergeant Shawn Hauck, Lieutenant Susan Izzo, Officer Anne Clark and Sergeant Brandon Fougnier (the "Officer Defendants") (collectively "Defendants") to produce alleged "unconsented illegally captured surveillance audio recordings surreptitiously captured while [Plaintiff] was undertaking off duty employment with the Syracuse Housing Authority" ("SHA"), to prohibit Defendants' attorneys from reviewing the recordings, and to allow the Court an opportunity to conduct an in-camera review of the recordings ("Hanks Letter I"). (ECF Doc. No. 59 at p. 1)

Hanks Letter I baselessly asserts:

> that "unconsented illegally captured surveillance audio recordings surreptitiously captured while Mr. Hanks was undertaking off duty employment with the Syracuse Housing Authority on or about April 6, 2022 and where said unconsented illegally captured surveillance

---

[1] On April 22, 2022, now-former Chief Buckner retired from the Syracuse City Police Department. *See* Declaration of Brian J. Butler, dated June __, 2022 ("*Butler Decl.*"), ¶ _.

[2] On April 22, 2022, Mayor Ben Walsh promoted now-current Chief Cecile. *See Butler Decl.*, ¶ _.

1

was delivered to Defendant Syracuse Police Department on or about the same day";

"the recordings were obtained by Defendants outside the formal channels of discovery and without the examination and consent of Plaintiff's counsel";

"his statements were being surreptitiously recorded on a cell phone" during his off-duty employment "[o]n or about April 7, 2022";

"upon information and belief, Officer Hanks engaged in conversations with Plaintiff's counsel during the dates in question while physically located in the Housing Authority's security detail office";

Defendants were "now in possession" of the statements, including supposed attorney-client protected communications; and

"Plaintiff's unvetted, illegally captured statements that have been illicitly procured by Opposing counsel must not be a windfall to defendants".

*Id.* at p. 1-3. Hanks Letter I refers to the recordings as the "fruit from an illegal wiretap in violation of N.Y. Penal Law §§ 250.00, 250.05," *id.* at n.1, and goes as far as to allege the "illegally captured statements" were "illicitly procured by Opposing counsel," *id.* at p. 3.

### 2. Defendants' Response to Hanks Letter I

The City and Chief Defendants promptly responded to Hanks Letter I the following day (the "City/Chief Response"), explaining the allegations in Hanks Letter I were "completely unsubstantiated," and, in fact, that they had reason to believe Plaintiff was not working at SHA at the time Hanks Letter I claims the recordings were made. (ECF Doc. No. 60 at 1). The City/Chief Response also highlighted Plaintiff's failure to satisfy the procedural prerequisite for making his purported "motion," including his failure to confer with Defendants prior to filing, as required by Local Rule 7.1(a)(2). *Id.* at 1-2.

The Officer Defendants similarly promptly responded to Hanks Letter I (the "Officer Response"), noting that Plaintiff failed to provide any evidence from someone with personal

knowledge of the underlying facts in support of his purported "motion," and that Plaintiff's counsel cited no authority to demonstrate Plaintiff's entitlement to the relief requested, *i.e.*, an order compelling Defendants to produce recordings despite any evidence the Officer Defendants had possession of them or even knew about the recordings. (ECF Doc. No. 62 at 1-2). The Officer Defendants specifically notified Plaintiff of their belief that the Hanks Letter I was sanctionable under FED. R. CIV. P. 11(b)(3) because it was not supported by fact. *Id.* at p. 1.

### 3. **Hanks Letter II**

Despite the City/Chief Response and the Officer Response, Plaintiff did not withdraw Hanks Letter I. Worse, Plaintiff did not pause to verify the factual basis for Hanks Letter I. He did not temper or retract his assertion that Defendants' counsel "illicitly procured" the recordings, and even after having been reminded by the City/Chief Defendants that Plaintiff was not working in off-duty employment on the day of the recordings, Plaintiff did not back away from that obvious misstatement, or provide proof otherwise. Rather, Plaintiff "doubled down" in another submission, asserting:

> Given the allegations that Defense counsel is poised to receive, let alone is already in possession of, unconsented, illegally captured statements that were surreptitiously recorded at Plaintiff's off-duty employment that conceivably contain complete and unredacted conversations of protected attorney client content, the imminency of the issuance of a protective order and the otherwise 'futility' of conferring with Defense counsel justifies Plaintiff's foregoing the Local Rules' otherwise imperative prerequisite of 'meeting and conferring' prior to petitioning the Court.

(ECF No. 61 at 1)[3] (the "Hanks Letter II").

Hanks Letter II even went further than Hanks Letter I, with additional baseless and inflammatory allegations. He asserted that the recording was "*one of many* surreptitiously recordings [*sic*] made

---

[3] Plaintiff's response was filed after the opposition filed by the City and Chief Defendants, but prior to the Officer Response being filed.

of Plaintiff that *temporally parallels his litigation* against Defendants." *Id.* Further, Plaintiff alleged not only of a risk that defense counsel might be in possession of the recording (which alone had no evidentiary support) but also that defense counsel had *already begun* reviewing recordings, stating: "any attempt to meet and confer would have undoubtedly … provid[ed Defense] counsel with *further opportunity* to *continue* in their examination of the recordings." *Id.* at 1-2. Incredibly, despite the severity of these allegations, which include suggestions of criminal conduct, Plaintiff again failed to provide a single declaration from someone with personal knowledge of the facts underlying the representations his counsel made to the Court.

Even more noteworthy is the undisputed fact that Plaintiff's counsel also represents Syracuse Police Officer Nikki Hendrix in litigation against the City. At the time Hanks Letter I and II alleged *Plaintiff's* attorney-client communications had been "illicitly procured by **Opposing counsel**" (emphasis added), Plaintiff's counsel should have been aware that it was *Officer Hendrix* who discovered the alleged recordings during her off-duty employment with SHA. In fact, in a notice of claim signed by Plaintiff's counsel on April 18, 2022 – two days before Hanks Letter I – Officer Hendrix did not allege that *any* of Defendants (or their counsel) illegally recorded her. Further, dhe did not name most of the Chief Defendants in that notice of claim. Plaintiff's counsel, therefore, had no reasonable basis to assert the recordings were illicitly procured by Defendants' attorneys, as they knew or should have known *through their own client Officer Hendrix*, that the recordings were made by an individual not employed by the Syracuse Police Department, at a time Plaintiff was not working at SHA, and that *Officer Hendrix* herself had turned the recording device into an evidence locker.

### 4. The Court Conference and Motion to Seal

As a result of Hanks Letters I and II and Defendants' Responses, on April 29, 2022, the Court held a telephonic conference before U.S. Magistrate Judge Andrew T. Baxter (the

4

"Conference") (ECF Doc. No. 64). During the Conference, the Court denied Plaintiff's purported "motion," (i.e., the requests in Hanks Letters I and II), "finding that the relief requested was not appropriately granted and was probably well beyond" the Court's "authority, based on the limited record during the very early stages of this litigation." (ECF Doc. Nos. 65, 69) "Otherwise, the court provided advice to the parties regarding the potential risks of undue complications in this litigation relating to the alleged recordings referenced in [P]laintiff's motion, without making any further rulings" (ECF Doc. Nos. 69).

Because of statements made by Plaintiff's counsel during the Conference, the Court stated that it would entertain a request to seal the proceeding.  Defendants made respective motions to seal on May 4, 2020 (the "Motion to Seal") (ECF Doc. Nos. 66, 67). Despite having been warned by the Officer Defendants that their conduct in Hanks Letters I and II could be considered sanctionable because they lacked a reasonable basis for their assertions, Plaintiff's counsel used their opportunity to respond to the Motion to Seal to *again* lodge incendiary and unsupported allegations against Defendants (and their counsel) ("Hanks Letter III"). (ECF Doc. No. 68)

Hanks Letter III first attempts to excuse his failure to substantiate the allegations in his purported "motion," or to follow the Court's local rules, by asserting Hanks Letter I "was filed precipitously in order to briskly stem a potentially fatal impending breach of privilege," *id.* at 1, *again* suggesting Defendants and/or their counsel would violate the attorney-client privilege. In addition, Hanks Letter III asserts Plaintiff will "more carefully set[] out his factual basis warranting this Court's active role in taking control over the protected recordings," but never provides these facts, *id.* at 1, choosing instead to imply, without proof, that the purported "motion" was based on fact.

Finally, Hanks Letter III boldly and baselessly alleges Defendants and/or their counsel unlawfully recorded Plaintiff and violated his right to attorney-client privilege, stating, *without any proof or substantiation*:

> Other than the above suggested limitations, it is however imperative that the public has access to this Court's concern and warning regarding the truly unnerving and potentially rights eviscerating turn of events wherein the discovery of surreptitious audio recordings captured at Plaintiff's off-duty employment are currently in Defendants custody and control(and [*sic*] where reasonable inferences exist suggesting that the recordings capture [*sic*] were potentially directed at their behest).

*Id.* at 3. As discussed above, based on their representation of Officer Hendrix, Plaintiff's counsel included these statements in Hanks Letter III when they knew or should have known there was no reasonable factual basis to support their libelous allegations against Defendants (almost all of whom are police officers) and Defendants' counsel.

Seeing through this transparent attempt to use "motion practice" to make provocative – but false – statements on the record, the Court granted the Motion to Seal, stating:

> The [C]ourt finds that any public interest in the reasons supporting a limited ruling on a premature discovery motion in a case in which discovery has not yet even started is outweighed by countervailing interests (1) to *avoid interference with an ongoing criminal investigation* involving the *alleged recordings*; (2) to **protect the privacy interests of the parties and non-parties** who were the subject of **unsworn, contested, and potentially libelous allegations by counsel** that had **no bearing** on the courts limited ruling on the discovery motion; and (3) to promote judicial efficiency by *avoiding entanglement by this court in the factual disputes between the parties*, while motions to dismiss, solely on the pleadings are pending before Senior District Judge Sharpe.

ECF Doc. No. 69 (emphasis added). In so finding, the Court cited its responsibility to ensure that its records "'are not used to gratify private spite or promote public scandal' or 'serve as reservoirs of libelous statements for press consumption,'" and stated that the advice given during the conference was in part to caution the parties to avoid trying to "exploit the record of the April 29

6

conference for other purposes [that] would impair the efficient management of [the] case." *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019)). The Court also stated that "efforts to exploit the record of the April 29 conference . . . would impair the efficient management of this case." *Id.*

### B. Procedural Background

Based on the conduct of Plaintiffs' counsel in Hanks Letters I-III, the Conference, and throughout this case, Defendants determined this Motion to be necessary. Accordingly, pursuant to FED. R. CIV. P. 11(c), Defendants served this Motion on Plaintiff's counsel more than 21 days ago. *Compare Butler Decl.*, ¶ _ and Ex. __, *with Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory*, 682 F.3d 170, 176 (2d Cir. 2012). In Defendants' counsels' letter to Plaintiff's counsel enclosing the Motion, they advised that:

> Plaintiff's purported "motion" already has been heard and denied by the Court, and thus, withdrawal of the motion is not sufficient. Defendants demand that Plaintiff's counsel file declarations correcting the misrepresentations made in Plaintiff's submissions in support of the "motion". If Plaintiff fails to take these actions, then Defendants intend to move for sanctions for the reasons set forth in the accompanying motion papers.

*Butler Decl.*, Ex. __. Since then, Plaintiff's counsel has not appropriately corrected the issues raised herein. Therefore, Defendants must make this Motion.

### ARGUMENT

### I.  Legal Standard

Rule 11 of the Federal Rules of Civil Procedure requires an attorney signing or filing papers with the Court to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that, among other things, (1) "it is not being presented for any improper purpose;" (2) "the claims, defenses, and other legal contentions are

warranted by existing law;" (3) "the factual contentions have evidentiary support" or "will likely

have evidentiary support." FED. R. CIV. P. 11(b)(1)-(3).

"The aim of the Rule is to deter baseless filings in district court[.]" *Baker v. Dorfman*, 2000

WL 1201467, at *4 (S.D.N.Y. Aug. 22, 2000) (citation and internal quotations omitted).

Accordingly, Rule 11 provides for sanctions "under appropriate circumstances, including where

1) an attorney has certified groundless and frivolous papers; 2) a document has been presented for

an improper purpose, such as to harass or cause unnecessary delay or expense; 3) a claim or defense

asserted is not supported by law; and/or 4) the allegations and other factual contentions made by a

party lack proper evidentiary support." *Forbes v. NAMS Int'l, Inc*. 2007 WL 1814656, at *5

(N.D.N.Y. June 21, 2007) (citing FED. R. CIV. P. 11(b), (c)). A Rule 11 violation "is complete

when the paper is filed," but:

> a litigants' obligations with respect to the contents of papers are not
> measured solely as of the time they are filed with or submitted to the
> court, but include reaffirming to the court and advocating positions
> contained in those pleadings and motions after learning that they
> cease to have any merit.

*Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318, 2017 WL

3671036, at * 28 (S.D.N.Y. July 18, 2017) (citations and internal quotations omitted).

When courts find a Rule 11 violation, they have authority to impose sanctions upon the

attorney, the represented party, or both, and also have the authority to award fees and costs. *See,

Banco de Ponce v. Buxbaum*, 1995 WL 92324, at *5 (S.D.N.Y. Mar. 7, 1995) (explaining the text

of Rule 11 authorizes a court to "impose upon [an attorney], a represented party, or both, *an

appropriate sanction*, which may include an order to pay to the other party . . . reasonable expenses

. . . including a reasonable attorney's fee"); *Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 272

(N.D.N.Y. 2008); *Ehrich v. Binghamton City Sch. Dist*., 210 F.R.D. 17, 25 (N.D.N.Y. 2002).

Courts even have "the discretion to dismiss an action with prejudice as a sanction pursuant to Rule

8

11," albeit only in extreme circumstances. *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417-18 (S.D.N.Y. 2003) (collecting cases).

## II.   Plaintiff's Attorneys Certified Groundless and Frivolous Papers, and Advanced Factual Contentions Either Without a Reasonable Inquiry or With Knowledge of Their Falsity

FED R. CIV. P. 11(b) provides that attorneys presenting papers to the court represent that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support" based on the attorneys' "knowledge, information and belief, formed after an inquiry reasonable under the circumstances." "Thus, under Rule 11, 'an attorney has an affirmative duty to make reasonably inquiry into the facts and the law.'" *In re Australia and New Zealand Banking Group Ltd. Securities Litigation*, 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 324 (2d Cir. 2004) (additional quotation and citation omitted)); *see also Joint Stock Company Channel One Russia Worldwide*, 2017 WL 3671036 at * 28. "Since the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers.'" *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F. 3d 143, 150 (2d Cir. 2009) (quoting *Ted Ladipus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)). "The attorney must ask if the client's knowledge is direct or hearsay, and consider whether the client's version of the facts is plausible." *Televideo Systems, Inc. v Mayer*, 139 F.R.D. 42, 47 (S.D.N.Y. 1991). "Where an attorney is capable of easily verifying the assertions of his client, and, thus, need not rely exclusively on his client, he has an obligation to do so." *Kirsh v. Scott*, No. 93-cv-4767, 1994 WL 132383, at * 5 (S.D.N.Y. Apr. 11, 1994).

Plaintiff's purported "motion" was groundless. In Hanks Letters I-III *and* at the Conference, Plaintiffs' counsel advanced baseless factual contentions that they knew to be false based on the information already in their possession. In Hanks Letter I, Plaintiff represented to the

Court not only that Defendants had obtained illegally-taken recordings of attorney-client communications outside of the discovery process, but also that the recordings were "illicitly procured by Opposing counsel." (ECF Doc. No. 59). As part of this narrative, Plaintiff's counsel represented that Plaintiff was working in his off-duty employment on the date in question – an easily verifiable fact. If Plaintiff's counsel had conferred with Plaintiff or the SHA, they would have known he was not working in off-duty employment that day. Moreover, if Plaintiff's counsel had conferred with their other client, Officer Hendrix, concerning the alleged recording, they could have resolved the matter, as it was she who discovered the cell phone and provided the cellphone to the Syracuse Police Department for storage in an evidence locker. But Plaintiff's counsel did not engage; rather, they proceeded, with willful blindness, to *repeatedly* file incendiary papers on the Court's public docket.

As outlined above, in multiple filings, Plaintiff continued with a repeated imaginary narrative that Defendants *and defense counsel* were engaged in a wild conspiracy to spy on Defendant at a workplace separate and apart from the City of Syracuse, and then improperly conceal, listen to and use attorney-client privileged conversations between Plaintiff and his counsel. With zero basis, Plaintiff certified the following:

1. SPD "Deployed a duplicitous surveillance campaign intentionally directed at Officer Hanks." *Hanks I.*

2. "[A] strong inference exists that the instant surveillance captured at the site of Plaintiff's off-duty employment may in fact be a continuation of Defendant's initial surveillance campaign." *Hanks I.*

3. "[T]he recently surfaced surveillance footage might be part of an ongoing campaign administered by Defendants." *Hanks I.*

10

4. "Plaintiff's unvetted, illegally captured statements…have been *illicitly procured by Opposing counsel*…." *Hanks I (emphasis added).*

5. "Defense counsel is poised to receive, let alone *is already in possession*, of unconsented, illegally captured statements that were surreptitiously recorded at Plaintiff's off-duty employment….." *Hanks II (emphasis added).*

6. "[T]he illegally captured audio recorded statements were conceivably part of the Syracuse Police Departments' ongoing surveillance campaign directed at Officer Hanks…." *Hanks II.*

7. "[T]his recording is *one of many* surreptitiously recordings made of Plaintiff that temporally parallels his litigation against Defendants." *Hanks II (emphasis added).*

8. "[A]ny attempt to meet and confer would have undoubtedly resulted in Defense counsel's categorical denial resulting in further delay and providing counsel with *further opportunity to continue in their examination of the recordings* and thereupon, the ability to glean pre-discovery, unconsented, protected statements. *Hanks II (emphasis added).*

9. "[A] circumstance exists where a party's unconsented and unrepresented statements surreptitiously and illegally captured by a hidden cellphone are in the possession of the opposing party *and counsel* and that reasonable inferences as to who directed such surveillance may involve the opposing party…." *(emphasis added)*

10. There was a "truly unnerving and potentially rights eviscerating turn of events wherein the discovery of surreptitious audio recordings captured at Plaintiff's off-duty employment are currently in Defendants custody and control (and where *reasonable inferences exist suggesting that the recordings capture were potentially directed at their behest*). Hanks III (emphasis added).*

11

The sheer volume and repetitiveness of these unfounded assertions cannot be ignored. Plaintiff took opportunity after opportunity to craft a scurrilous narrative that Defendants *and defense counsel* were engaging in unethical and even illegal conduct in the course of this litigation. The improper purpose of these filings are confirmed by Plaintiff's counsel's failure to attempt to comply with the Local Rules. If Plaintiff's counsel had conferred with Defendants' attorneys as required by Local Rule 7.1(a)(2), they would have learned that Defendants' counsel had not procured any communications between Plaintiff and his counsel, and the issue could have been easily resolved. Plaintiff's counsel's suggestion that even a phone call to defense counsel would have been futile shows that the true intent was merely to smear the reputation of Defendants and their counsel.

The statements set forth in Plaintiff's papers were clearly not based on an objectively reasonable inquiry into the underlying facts. Upon information and belief, Plaintiff's counsel will be unable to provide any admissible, evidentiary support for their assertions because, as they should have learned from Ms. Hendrix, those assertions were blatantly inaccurate.

Furthermore, Plaintiff's counsel made no attempt to confer with Defendants' attorneys before filing their reply. They did not inquire as to the basis for Defendants' understanding that Plaintiff was not working at the time the recordings were made, nor did they attempt to verify their baseless, incorrect, and libelous allegation that Defendants' attorneys had "illicitly procured" the statements. Instead, they asserted that "any attempt to meet and confer would have undoubtedly resulted in Defense counsel's categorical denial resulting in further delay and providing counsel with **further opportunity to continue in their examination of the recordings** and thereupon, the ability to glean pre-discovery, unconsented, protected statements." *Id.* at 2 (emphasis added). Thus, without any objectively reasonable basis, Plaintiff's counsel asserted Defendants' attorneys

12

were engaging in what would amount to professional misconduct by examining the "illicitly procured" attorney-client privileged communications of an adverse party.

At the Conference regarding Plaintiff's purported "motion," his counsel made no attempt to articulate any factual basis for their assertions. Instead, they made "*unsworn, contested, and potentially libelous*" allegations of a personal nature that had "*no bearing on the proceeding*" against both parties and non-parties. *See* ECF Doc. No. 69 (emphasis added). Thus, Plaintiff's counsel not only reaffirmed prior misrepresentations that they had made to the Court – which were made either with knowledge of their falsity or without reasonable inquiry, but also raised irrelevant personal allegations against both parties and non-parties with no apparent basis in fact.

Plaintiff and his counsel must be sanctioned. They made extensive factual misrepresentations to the Court without even attempting to support them with evidence or to describe any attempt to verify them. They also failed to confer with Defendants' attorneys despite having been put on notice that Defendants believed their representations were baseless, and instead ratcheted up the rhetoric at each step in the process. This conduct clearly warrants significant sanctions to deter Plaintiff and his attorneys from engaging in such conduct in the future. *See Flannigan v. Vulcan Power Group, LLC*, No. 09-cv-8473, 2019 WL 3242531, at * 12 (S.D.N.Y. July 3, 2019) (imposing sanctions against pro se attorney and holding that "[n]o reasonable party could believe that a single letter from the IRS indicating a form had been submitted constituted 'undeniable' evidence that Plaintiff's counsel 'knowingly and willing[ly] file[d] false documents,' that [t]he facts are interconvertible' in demonstrating this, and that this is 'an absolutely clear case' of Plaintiff's counsel filing false documents."); *Goldman v. Barrett*, No. 15-cv-9223, at * 11 (S.D.N.Y. Sept. 4, 2018) (imposing sanctions where plaintiffs gave "no indication in any of their motion papers of any specific facts" supporting their newly asserted claims); *Kirsh v. Scott*, 1994

WL 132383 at * 5 (imposing sanctions in the amount of $10,000, in 1994, where the attorney relied on the assertions of his client in asserting that he had a heart attack without making any attempt to verify that assertion through medical records); *Quadrozzi v. City of New York*, 127 F.R.D. 63, 81-82 (S.D.N.Y. 1989) (sanctioning attorney who failed to make a meaningful inquiry to substantiate the statements of his client).

Furthermore, Plaintiff's counsel did not provide any legal support for his motion under existing law or a basis for extending existing law to provide the relief requested. As this Court held, the "relief requested was not appropriately granted and was probably well beyond [its] authority." (ECF Doc. No. 69) Accordingly, in the absence of any apparent basis in existing law or any basis for extending existing law to provide the relief requested, Plaintiff's submissions are also sanctionable due to their legal deficiencies. *See Lawrence v. Wilder Richman Securities Corp.*, 417 Fed. Appx. 11, 14 (2d Cir. 2010) (summary order) (imposing sanctions where plaintiff lacked a good faith basis in law for the legal theories he advanced); *Murphy v. Cuomo*, 913 F. Supp. 671, 683 (N.D.N.Y. 1996) (imposing sanctions where plaintiff's claim was based on a statute with no private right of action, which would have been discovered by a cursory review of the caselaw).

## III.   Plaintiff's Motion Was Brought for an Improper Purpose

Plaintiff's motion was also brought for improper purposes in violation of Fed. R. Civ. P. 11(b)(1). As set forth above, Plaintiff's motion was founded on misrepresentations of fact and baseless conjecture.  The motion was unsupported by admissible evidence from an individual with personal knowledge of the underlying facts or legal authority as required by law. Even after being advised that the City and Chief Defendants believed Plaintiff's allegations were unsubstantiated, Plaintiff's counsel dialed up their baseless rhetoric, asserting:

> Where like here, a circumstance exists where a party's unconsented
> and unrepresented statements surreptitiously and illegally captured
> by a hidden cellphone are in the possession of the opposing party

14

> and counsel and that reasonable inferences as to who directed such surveillance may involve the opposing party, such circumstances are clearly imminent and more than deservedly warrant immediate judicial intervention.

(ECF Dc. No. 61 at 2) Plaintiff's counsel further stated that it was "imperative" that the motion be "adjudicated forthwith in order to curtail any further incursion into the ethically proper unfolding of an adversarial proceeding," but again offered no factual support for their allegations and insinuations of unlawful and unethical conduct on the part of Defendants and their attorneys. *Id.*

Plaintiff's counsel then raised the stakes at the Conference, offering support insufficient to establish entitlement to any sort of protective order, but also raising new allegations against both parties and non-parties that were "unsworn, contested and potentially libelous," and that "had no bearing" on the motion. (ECF Doc. No. 69) Then, for the fourth time, they made similarly baseless representations that Defendants and their attorneys engaged in unlawful and unethical conduct by recording Plaintiff in their opposition to Defendants' Motion to Seal (ECF Doc. No. 68).

The actions by Plaintiff and his counsel strongly indicate that Plaintiff's motion was asserted for an improper purpose. *See In re Gushlak,* 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012) (explaining where improper motives are present, "it is fair to conclude that counsel was aware that the frivolous argument was baseless, but raised it anyway because success on the merits was not the ultimate objective."); *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 128 (N.D.N.Y. 1996).

It is respectfully submitted that the only logical conclusion to be drawn from the evidence is that Plaintiff's baseless motion was intended to be used as a basis to generate negative publicity for Defendants and distract from potential coverage of the pending motions to dismiss. Plaintiff represented in his papers that the motion was being brought due to an emergency and that there was an imminent need for the issuance of a protective order, but he provided no explanation as to

15

why he waited to file the motion until April 20, 2022—the day after the briefing on Defendants'

motion to dismiss was completed—when he allegedly "discovered that his statements were being

surreptitiously recorded on a cell phone" on or about April 7, 2022.  (ECF Doc. No. 59 at 2; ECF

Doc. No. 61 p. 1-2), As noted herein, Plaintiff's counsel made "unsworn, contested and potentially

libelous allegations" on the record at the Conference despite the fact that they had no bearing on

the motion. There can be no proper purpose for having engaged in such conduct.

While the Court properly sealed the transcript in part to ensure that the record was "'not

used to gratify private spite or promote public scandal" or "serve as [a] reservoir[] of libelous

statements for press consumption" in this instance (ECF Doc. No. 68 (quoting *Brown*, 929 F.3d at

51)), Plaintiff's counsel have a history of engaging in questionable behavior in soliciting media

coverage. There has been substantial media coverage of this action, including coverage of a news

conference held by Plaintiff's counsel on the steps of City Hall at which they called for Deputy

Chief Trudell's termination and characterized him as "an admitted racist." *See* Chris Libonati,

*Citing 'Jim Crow Culture,' Hanks Files Federal Suit, Adds Deputy Chief*, POST STANDARD,

2021 WLNR 26738737, Aug. 17, 2021. Given the lack of legal or factual support for the motion

and the history of Plaintiff's counsel making inflammatory accusations in the media, the only

logical conclusion that can be drawn is that the motion was made and maintained to serve an

improper purpose: to generate media attention and public support for Plaintiff and to distract from

Defendants' motion to dismiss. Although "the generation of adverse and economically

disadvantageous publicity" is not actionable under Rule 11 where it is based on "the assertion of

nonfrivolous claims" (*see Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995)), sanctions

are appropriate where, as here, the threat of adverse publicity arises from frivolous allegations

made by counsel without reasonable inquiry (*see White v. General Motors Corp., Inc.*, 908 F.2d 675, 683 (10th Cir. 1990)).

## **CONCLUSION**

For the foregoing reasons, the City and Chief Defendants respectfully request that the Court grant their Motion and impose the following sanctions on Plaintiff's counsel:

(1) Strike the offending filings (ECF Nos. 59, 61, 68) from the docket;

(2) Order Plaintiff's counsel to pay the City and Chiefs Defendants' legal fees associated with responding to Plaintiff's Motion for a Protective Order, including the Motion to Seal; and

(3) Admonish Plaintiff's counsel for their conduct.

Dated: August __, 2022

BOND, SCHOENECK & KING, PLLC

By:___ *s/ Brian J. Butler* _____

Brian J. Butler (510105)
Colin M. Leonard (512865)
Nicholas P. Jacobson (519298)
Liza R. Magley (519849)
One Lincoln Center
Syracuse, New York 13202-1355
Telephone:  (315) 218-8000
Email: bbutler@bsk.com
Email: cleonard@bsk.com
Email: njacobson@bsk.com
Email: lmagley@bsk.com

*Attorneys for Defendants City of Syracuse, Chief Kenton Buckner, Deputy Chief Richard Trudell, Deputy Chief Derek McGork, and Chief Joseph Cecile*

17