**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRANDON HANKS,**

                  **Plaintiff,**

        **v.**

**CITY OF SYRACUSE et al.,**

                  **Defendants.**
_____

                      **5:21-cv-921**
                      **(GLS/ATB)**

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Offices of Bonner & Bonner    A. CABRAL BONNER, ESQ.
475 Gate 5 Road, Suite 211       CHARLES A. BONNER, ESQ.
Sausalito, CA 94965

Ryder Law Firm                JESSE P. RYDER, ESQ.
6739 Myers Road
East Syracuse, NY 13257

**FOR THE DEFENDANTS:**
*City of Syracuse, Kenton Buckner,*
*Deputy Chief Richard Trudell,*
*Deputy Chief Joseph Cecile & Derek*
*Mcgork*
Bond Schoeneck & King, PLLC    BRIAN J. BUTLER, ESQ.
One Lincoln Center            COLIN M. LEONARD, ESQ.
Syracuse, NY 13202          LIZA R. MAGLEY, ESQ.
                         NICHOLAS P. JACOBSON,
                         ESQ.

*Captain Timothy Gay, Colin Hillman*
*William Kittell, Anothony Fiorini, David*
*Metz, Shawn Hauck, Susan Izzo, Ann*

*Clark & Brandon Fougnier*
Hancock Estabrook, LLP        JOHN G. POWERS, ESQ.
1800 AXA Tower I             MARY L. D'AGOSTINO, ESQ.
100 Madison Street
Syracuse, NY 13202

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Brandon Hanks commenced this action against defendants the City of Syracuse, Kenton Buckner, Deputy Chief Richard Trudell, Deputy Chief Joseph Cecile, Captain Timothy Gay, Colin Hillman, Derek Mcgork, William Kittell, Anothony Fiorini, David Metz, Shawn Hauck, Susan Izzo, Ann Clark, Brandon Fougnier, and John Does alleging a host of violations pursuant to Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and state law.  (Compl., Dkt. No. 1.) Pending are defendants' motions to dismiss.  (Dkt. Nos. 25, 28, 29, 32.) For the reasons that follow, defendants' motions are granted and the complaint is dismissed.[2]

_____

[1]  *See* 42 U.S.C. §§ 2000e-2000e-17.

[2]  Hanks names John Does 1-100 as defendants in this action, stating that he does "not know the true names and capacities, whether

## II. **Background**[3]

Hanks filed this action in August 2021, and, at that time, was a four-year veteran of the Syracuse Police Department (SPD), assigned to the Gun Violence Suppression Detail (GVSD), where he was "the only African American in th[e] unit."  (Compl. ¶¶ 19-20.)  Hanks' direct supervisor, Lieutenant Donald Patti, recommended that Hanks be transferred to the Gang Violence Taskforce (GVT), which is a "more prestigious" taskforce, and Hanks viewed an assignment to the GVT "as an opportunity to advance his career."  (*Id.* ¶ 20.)  There are no African American members of the GVT.  (*Id.* ¶ 26.)

After becoming aware of Hank's potential transfer, Trudell, Gay, Hillman, Mcgork, Kittell, Fiorini, Metz, and Hauck initiated "a surveillance campaign that . . .  monitor[ed Hanks'] whereabouts and communications,"

individual, corporate, associate, or otherwise of" of the Doe defendants. (Compl. ¶ 15.)  While the Doe defendants do not move for dismissal, because Hanks' "complaint contains no facts or allegations pertaining to the unidentified [Doe] defendants other than inclusion of John Does 1–[10]0 in the caption . . . to the extent the . . . complaint raises any . . . claim against these [Doe] defendants, the complaint must be dismissed as to them for failure to state a claim upon which relief can be granted." *Cerny v. Rayburn*, 972 F. Supp. 2d 308, 316 (E.D.N.Y. Aug. 20, 2013).

[3]  The facts are drawn from Hanks' complaint, (Dkt. No. 1), and presented in the light most favorable to him.

and informed Hanks that they were doing so on account of a false "claim that a gang had placed a 'hit' on" him.  (*Id.* ¶ 21.)  In truth, Hanks' surveillance was motivated by a desire to "conjure incriminatory evidence" in order to "undermine [Hanks'] promotion to the [GVT] . . . [and] to destroy his career as a police officer."  (*Id.*)  Additionally, Hanks' social media accounts were "scour[ed]" with the goal of "locating anything that could serve as an impediment to his" transfer to the GVT.  (*Id.* ¶ 27.)  To further hinder Hanks' transfer to the GVT, Trudell ordered Gay "to conduct a bogus investigation of" Hanks.  (*Id.*)

After the surveillance and investigation of Hanks, Gay authored an internal memorandum, accusing Hanks of "associati[ng] with known gang members. . . [and] convicted criminals, trafficking . . . narcotics," being "affiliated with local gangs and [being] involved in gang violence, . . . , and[,] . . . being in uniform while listening to 'rap music.'" (*Id.* ¶ 29.)

On March 24, 2021, Hanks "received a verbal reprimand" based on a video posted on his "personal social media page" depicting him "while off-duty and physically located in his own private vehicle . . . wearing a turtleneck [bearing] the letters 'SPD' while rap music c[ould] be heard playing."  (*Id.* ¶ 35.)  In response to the reprimand, Hanks informed SPD

4

"that he was not the one playing the rap music, but accepted his discipline and immediately removed the social media post" at issue.  (*Id*.)

Hanks filed his notice of claim on June 23, 2021, "highlight[ing] the discriminatory culture that prevailed within [SPD], as well as the racially motivated and constitutionally infirm surveillance and fabricated evidence compiled" against him.  (*Id.* ¶ 36.)  "As a direct result of filing his" notice of claim, defendants "retaliated against [Hanks,] by disciplining him a second time for a social media post that included a rap song playing in the background" that used a racial slur.  (*Id.*)  Again, "in response to" Hanks' notice of claim, Izzo, Cecile, and Buckner disciplined Hanks "for the same offense of playing rap music," and issued Hanks a written reprimand which was included in his personnel file.  (*Id.* ¶ 37.)

Hanks filed a charge of discrimination with the EEOC and received a right-to-sue letter before commencing this action.  (*Id.* ¶ 17.)

### III.  <u>Standard of Review</u>

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on*

*other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## IV.  Discussion

### A.    Fourth and Fourteen Amendment Claims

While Hanks' complaint is far from a model of clarity, he appears to assert Fourth and Fourteenth Amendment claims against all defendants. (Compl. ¶¶ 96-108.)  Defendants, among other arguments, assert that these claims should be dismissed pursuant to Rule 8 of the Federal Rules of Civil Procedure.  (Dkt. No. 30 at 5, 7-8; Dkt. No. 32, Attach. 1 at 7-9; Dkt. No. 35 at 9-10.)  Hanks counters "that [defendants'] grasp on Rule 8's pleading requirements . . . is unapologetically misinformed and legally deficient."  (Dkt. No. 45 at 1; *see* Dkt. No. 48 at 1, 8.)  The court agrees with defendants.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of Rule 8 is to ensure that the court can understand a claim and the adverse parties can properly frame a response to it.  *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

A court should not dismiss a complaint if the plaintiff has stated

6

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

With respect to Hanks' Fourth Amendment claim, he makes no attempt to attribute any specific conduct to any individual defendant, (Compl. ¶¶ 27, 96-110), beyond the allegation that Clark "solicit[ed] information from [Hanks,] whose confidential interaction she then violated

7

by publicly affirming disparaging social media posts, thus violating [Hanks']
privacy."  (Compl ¶ 98.)  Therefore, the court has no indication as to what,
if any, conduct Hanks bases his claim on, beyond the aforementioned,
puzzling accusation with respect to Clark, and a generic accusation that all
defendants "surveilled" Hanks.  (Compl. ¶ 97 ("D[efendants] conspired to
scour, search and seize [Hanks'] personal life . . . [by] conduct[ing] a covert
and illegal invasion into [his] personal life without consent or [his]
knowledge . . . , nor with probable cause, reasonable suspicion, or a
warrant signed by a court of law."))  However, the complaint fails to allege
who engaged in the surveillance, what the surveillance entailed, or how the
surveillance constituted a Fourth Amendment violation.  (*See generally*
Compl.)  Accordingly, this claim must be dismissed.  *See Middleton v.
United States*, No. 10-CV-6057, 2012 WL 394559, at *3 (E.D.N.Y. Feb. 7,
2012) (dismissing the complaint pursuant to Rule 8 where the plaintiffs'
"rambling" and "conclusory . . . allegations [were] so vague as to make it
impossible for defendants to frame a response" (internal quotation marks
omitted)); *see also Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-
0199, 2010 WL 1132683, at *10 (N.D.N.Y., Mar. 23, 2010) ("The complaint
lumps together all of the defendants in each claim without providing any

factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Regarding Hanks' Fourteenth Amendment claim, he makes no attempt to identify what specific Fourteenth Amendment theory under which he seeks to proceed, listing violations of "his right to property," "right to equal protection of law," "right to pursue his career and seek advancement," "right to procedural due process of law" and "right to . . . substantive due process of law."  (*Id.* ¶¶ 102-07.)  Additionally, he makes no attempt to allege specific conduct by any defendant that would constitute a violation of any Fourteenth Amendment right, and, instead, argues generically that defendants "engag[ed] in a conspiracy to surreptitiously investigate and surveil [him] and publish fabricated accusations that [he] was . . . 'gang affiliated,' a 'gang member,' a 'narcotics trafficker,' and someone who listens to 'rap music,' with the intention of depriving him of a career advancement, . . . thus violating [Hanks'] Fourteenth Amendment Rights."  (Compl. ¶ 102.)  Accordingly, this cause of action must also be dismissed.  *See Benn v. Nassau County*, No. 10-CV-1963, 2010 WL 2976540, at *7 (E.D.N.Y. July 22, 2010) (dismissing a Fourteenth Amendment claim where "the [c]ourt [wa]s unable

to discern any such . . . claim," due to the fact that, "[w]holly absent from the [c]omplaint [we]re any factual allegations that . . . give rise to [such a] claim[].")*; see also Corazzini*, 2010 WL 1132683, at *10.

## B.   <u>Section 1981</u>

Hanks, who is represented by counsel, and, thus, is not afforded the special solitude given to a pro se litigant, *see Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007), asserts causes of action, alleging racial harassment, discrimination, retaliation, and violation of his right to contract, pursuant to 42 U.S.C. § 1981.  (Compl. ¶¶ 71-88,109-22.)  As defendants correctly argue, (Dkt. No. 35 at 10), 42 U.S.C. § 1981 does not provide a private right of action.  *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).  Accordingly, Hanks' 42. U.S.C. § 1981 causes of action are dismissed.[4]

## C.   <u>Sections 1985 & 1986</u>

_____

[4]  Even if Hanks had properly brought these claims pursuant to 42 U.S.C. § 1983, dismissal would still be warranted for the same reasons his Title VII employment discrimination claims are dismissed, as discussed below.  *See infra* Part IV.D; *see also Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (noting that Title VII and 42 U.S.C. § 1983 employment discrimination claims are analyzed under the same standard).

Hanks' 42 U.S.C. § 1985 conspiracy claim, which he asserts pursuant to paragraph (1) of the statute, (Compl. ¶ 124), must be dismissed, because, as defendants point out, (Dkt. No. 30 at 21-22; Dkt. No. 35 at 10-11), 42 U.S.C. § 1985(1) is inapplicable to these state actor defendants as matter of law.  *See Asensio v. DiFiore*, No. 18-CV-10933, 2019 WL 4392743, at *7 n.5 (S.D.N.Y. Sept. 13, 2019) (noting that 42 U.S.C. § 1985(1) "only applies to conspiracies intended to interfere with . . . federal officers, not state officers." (citation omitted)).  And because "the Second Circuit has ruled that [a] claim under [42 U.S.C. §] 1986 . . . lies only if there is a viable conspiracy claim under [42 U.S.C. §] 1985," *Alli v. The City of New York*, No. 21 Civ. 4767, 2022 WL 4484624, at *2 n.5 (S.D.N.Y. Sept. 27, 2022), Hanks' § 1986 claim must be dismissed. Accordingly, Hanks' 42 U.S.C. §§ 1985(1)[5] and 1986 claims are dismissed.

**D.   <u>Title VII</u>**

_____

   [5]  Even if Hanks had brought his claim pursuant to 42 U.S.C. § 1985(3), such a claim would be dismissed as Hanks has failed to put forth anything beyond wholly conclusory allegations of a "conspiracy."  (*See, e.g.*, Compl. ¶¶ 20, 102, 134); *see Powell v. City of Jamestown*, No. 1:21-cv-721, 2022 WL 1913581, at *18 (W.D.N.Y. June 3, 2022) ("Vague and conclusory allegations . . . will not suffice to state a conspiracy claim under . . . § 1985(3)." (citation omitted)).

As a preliminary matter, Hanks asserts Title VII violations against all defendants, however, as defendants properly argue, (Dkt. No. 30 at 7; Dkt. No. 35 at 10), Title VII does not provide a right of action against individuals. *See Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).  Accordingly, Hanks' Title VII claim is dismissed as against Buckner, Trudell, Cecile, Mcgork, Hillman, Kittel, Fiorini, Metz, Hauck, Izzo, Fournier, Clark, and Gay.

### 1.   *Discrimination and Hostile Work Environment*

Regarding the City of Syracuse, among other arguments, defendants seek dismissal of Hanks' Title VII claim, insofar as it is premised on a theory of racial discrimination or a racially hostile work environment, because Hanks "has not plausibly alleged any acts against him motivated by discriminatory animus based on race," and, instead "base[s his claims] on wholly conclusory allegations."  (Dkt. No. 25, Attach. 4 at 6, 12.)  Hanks argues that he "has more than sufficiently apprised . . . [d]efendants of the racial animus underlying his claims pursuant to Title VII," and, that "[o]n account of refusing to play by the standards that his Caucasian colleagues required of him," he "incurred the[] wrath [of white SPD officers] that culminated in an aggressive campaign to obstruct his promotional

opportunities and thereby dreams of effecting systemic change." (Dkt. No. 46 at 10, 13.) Additionally, Hanks maintains that "racially disparate staffing" within SPD supports his claims. (*Id.* at 13.)

To make out a prima facie case for Title VII discrimination, a plaintiff must show that "(1) [he] was within [a] protected class; (2) [he] was qualified for [his] position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (internal quotation marks omitted).

A plaintiff asserting a Title VII hostile work environment claim based upon race must establish a prima facie case by showing that the conduct he complains of: "(1) [wa]s objectively severe or pervasive, that is, . . . the conduct create[d] an environment that a reasonable person would find hostile or abusive; (2) create[d] an environment that the plaintiff subjectively perceive[d] as hostile or abusive; and (3) create[d] such an environment because of the plaintiff's [race]." *Bowman v. Granny's Kitchen, LLC*, No. 6:14-cv-00585, 2015 WL 541276, at *2 (N.D.N.Y. Feb. 10, 2015) (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)) (internal quotation marks omitted).

13

Assuming, without deciding, that Hanks has established the other elements of his discrimination and hostile work environment claims, his complaint fails to allege any conduct by any defendant that creates an inference of discrimination or the existence of a sufficiently severe or pervasive racially hostile work environment.  (*See generally* Compl.) Hanks' complaint is completely devoid of any specific facts indicative of racial animus beyond conclusory allegations.  (*See, e.g.*, *id.* ¶ 41 ("D[efendants] . . . have engaged in illegal employment practices including, but not limited to, discrimination, creating a hostile work environment, and retaliation on account of . . . Hanks' race." ); *id.* ¶ 43 ("Officer Brandon Hanks was denied a promotion and other benefits, terms and conditions of employment based on an animus against his race.")), which cannot serve as the basis for his claims.  *See McCullough v. Fin. Info. Servs. Agency*, 923 F.Supp. 54, 57 (S.D.N.Y. 1996) (dismissing a Title VII discrimination claim where the "[p]laintiff . . . failed to show any evidence of disparate treatment," other than the "conclusory allegation" of "an elaborate and sophisticated scheme . . . used to conceal the general treatment of minorities").  Further, Hanks cannot premise his discrimination or hostile work environment claims on the fact that both the GVSD and GVT were

comprised of exclusively "European Americans," other than himself.
(Compl. ¶¶ 26, 27); *see De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp.
2d 393, 413 (E.D.N.Y. 2013) ("The fact that the [p]laintiff was the only
Filipino in his office is not sufficient to connect the [d]efendants' actions
and behavior to a discriminatory intent."). Finally, while Hanks notes that in
the past Trudell admitted to using racial and derogatory slurs when "off
duty," (Compl. ¶ 28), he does not allege that Trudell—or any
defendants—directed any slur at him, used a slur in his presence, or that
any alleged use of a slur was tied to any alleged adverse employment
action experienced by Hanks. (*See generally* Compl.) Accordingly, to the
extent Hanks premises his Title VII cause of action on a theory of
discrimination or hostile work environment, such claims are dismissed.

    *2. Retaliation*

    Among other arguments, defendants assert that Hanks' Title VII
retaliation claim must be dismissed because Hanks suffered no adverse
employment action. (Dkt. No. 25, Attach. 4 at 16-18.) Hanks counters that
his "allegation that he was subjected to a written disciplinary reprimand"
demonstrates adverse action. (Dkt. No. 46 at 17-18.)

    To make out a prima facie case for Title VII retaliation, a plaintiff

must demonstrate "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (citation omitted).  "[A]n adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Here, assuming, without deciding, that Hanks has established the other elements of his retaliation claim, his claim nonetheless fails, as his written reprimand does not qualify as an adverse employment action.  *See Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (finding that "[o]ral and written warnings do not amount" to an adverse employment action for the purposes of a Title VII retaliation claim (citation omitted)); *see also Accely v. Consol. Edison Co. of N.Y.*, No. 19 Civ. 5984, 2022 WL 973415, at *9 (S.D.N.Y. Mar. 31, 2022) (citation omitted).[6]

_____

[6]  For the same reasons, Hanks' First Amendment retaliation claim must also be dismissed.  *See Franzon v. Massena Mem'l Hosp.*, 485 F. Supp. 2d 148, 161 (N.D.N.Y. 2007) ("In order to establish a prima facie

**E.    Additional Contentions**

Additionally, as Hanks has failed to state a claim pursuant to 42 U.S.C. §§ 1981, 1983, 1985, or 1986, his *Monell* claim against the City of Syracuse, (Compl. ¶¶ 57-70), must be dismissed.

Finally, because all of Hanks' federal claims are dismissed, the court declines to exercise jurisdiction over the remaining state law claims. *See Clark v. Dominique*, 798 F. Supp. 2d 390, 408 (N.D.N.Y. 2011) ("Although a federal court has discretion to retain jurisdiction over state law claims after the dismissal of the federal claims that created original jurisdiction, 'where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.'" (quoting *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006))).

---------------------

First Amendment retaliation claim . . . [the p]laintiff must show" among other things, that "he suffered an adverse employment action" (citing *Zelnik v. Fashion Inst. Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)); *see also Manon v. Pons*, 131 F. Supp. 3d 219, 232 n.8, (noting that "[t]he standard for an 'adverse action' in the context of First Amendment retaliation is substantially similar to the . . . Title VII retaliation" standard (citation omitted)).

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss (Dkt. Nos. 25, 28, 29, 32) are **GRANTED**; and it is further

**ORDERED** that the Doe defendants are **DISMISSED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge

18